**CITY OF EAST PROVIDENCE**

v.

**INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS LOCAL 850.**

No. 2007–277–Appeal.

Supreme Court of Rhode Island.

Nov. 20, 2009.

Gina A. DiCenso, Esq., for Plaintiff.

Margaret L. Hogan, Esq., Wakefield, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Chief Justice WILLIAMS (ret.), for the Court.

After successfully undergoing treatment for prostate cancer, East Providence Fire Department Battalion Chief, James Moniz (Chief Moniz), requested that his sick leave be restored and that he be given the full benefits pursuant to G.L. 1956 chapter 19.1 of title 45, entitled "Cancer Benefits for Fire Fighters." After his request was denied by the City of East Providence (the city), the International Association of Firefighters, Local 850 (Local 850), filed a grievance on his behalf alleging that the denial of the request to restore Chief Moniz's sick time violated the parties' collective-bargaining agreement. The parties submitted to arbitration, and the arbitrator issued a decision granting the restoration of Chief Moniz's forty-four days of sick time. The Superior Court confirmed the award, and the city timely appealed. In this case we are called upon to determine whether the arbitrator exceeded his authority in determining that East Providence firefighters are entitled to injured on-duty benefits through the application of the "Cancer Benefits for Fire Fighters" statute. For the reasons set forth in this opinion, we conclude that the "Cancer Benefits for Fire Fighters" statute does indeed provide injured on-duty benefits to East Providence firefighters.

## I

### Facts and Travel

The facts in this case are largely undisputed. Chief Moniz, a thirty-year veteran of the East Providence Fire Department, was diagnosed with prostate cancer in August 2002. As a result of his diagnosis, Chief Moniz underwent surgery and treatment while on sick leave from August 22, 2002, until November 18, 2002, after which he returned to active duty. Upon returning to active duty, Chief Moniz wrote to the chief of the East Providence Fire Department requesting that the forty-four duty days of which he was absent receiving cancer treatment be converted to "injured on duty" time. By requesting that his sick leave be converted to injured on-duty time, Chief Moniz sought to have the forty-four days of sick leave credited back to his sick leave reserve.[1] Under Article X, Section 10.02 of the collective-bargaining agreement between the City of East Providence and Local 850, "In-line-of-duty illness" time shall be in conformity with G.L. 1956 § 45-19-1 (IOD statute). The relevant provisions of the parties' collective-bargaining agreement are as follows:

"10.03 IN–LINE–OF–DUTY INJURY

"(A) Members of the fire department, covered by this contract who are injured in the line of duty including non-civic details to which they are assigned, shall receive full salary while their incapacity exists or until they are placed on a disability retirement (This section is in conformance with General Laws of Rhode Island, 1956, as amended, Section 45–19–1)."

In his request letter to the chief of the department, Chief Moniz referenced two other firefighters who had also been diagnosed with cancer and "had their sick leave time converted to injured on-duty time prior to their retirement from active duty." Those two firefighters, however, did not return to active duty following

---

1. Chief Moniz did not seek compensation from the city because he was paid his usual salary while on leave pursuant to the sick leave provision, Article X, Section 10.02 of the collective-bargaining agreement between the city and Local 850. Therefore, the only issue before this Court is whether Chief Moniz's leave for treatment of his prostate cancer should have been deducted from his sick leave reserve or whether that time should have been restored because his leave fell within the ambit of G.L. 1956 § 45–19–1.3.

their cancer diagnoses, and both retired from the East Providence Fire Department while on sick leave. The department chief denied Chief Moniz's request, and the union filed a grievance pursuant to the collective-bargaining agreement. The human resources director denied Chief Moniz's grievance, in part because he was able to return to active duty, whereas other firefighters' cancer diagnoses resulted in their disability retirements.[2] In his letter denying Chief Moniz's request, the human resources director acknowledged that:

> "It is the City's policy to evaluate each request that cancer be presumed to be work related on a case-by-case basis. In the past, the City has ruled in two cases, based on the type of cancer and the fact that the cancer led directly to disability retirements, that the sick leave taken immediately prior to the disability pension should be converted to injury on duty leave. In your case, based on the type of cancer and the fact that you have recovered sufficiently to return to active duty, it is the City's position that your sick leave not be converted to injured on duty status."

After the city denied Chief Moniz's grievance, Local 850 submitted the grievance to arbitration on Chief Moniz's behalf pursuant to Article XVI of the parties' collective-bargaining agreement. At the arbitration hearing, the city argued that its firefighters were not entitled to benefits under the "Cancer Benefits for Fire Fight-ers" statute because it applied only to municipalities participating in the optional retirement plan under G.L. 1956 chapter 21 of title 45. Local 850 argued that the "Cancer Benefits for Fire Fighters" statute was incorporated into the parties' collective-bargaining agreement through the adoption of § 45–19–1.[3] Local 850 argues, in the alternative, that the city's previous grant of the cancer benefit to two of its firefighters constituted a past practice, entitling Chief Moniz to benefits under the "Cancer Benefits for Fire Fighters" statute.

On December 9, 2004, the arbitrator issued a decision in favor of Local 850, and awarded Chief Moniz forty-four days of sick leave back to his reserve. In his decision, the arbitrator concluded that the parties had incorporated the IOD statute into the collective-bargaining agreement. He further found that, by enacting the "Cancer Benefits for Fire Fighters" statute, the General Assembly amended the IOD statute to include cancer as an occupational injury for Rhode Island firefighters. In the alternative, the arbitrator found that any ambiguity regarding the applicability of the "Cancer Benefits for Fire Fighters" statute to the collective-bargaining agreement should be resolved by looking at the parties' prior application of the contract language. In doing so, the arbitrator found that the city had provided benefits through the "Cancer Benefits for Fire Fighters" statute to two other fire-

---

**2.** We commend Chief Moniz for returning to active duty after battling cancer, and for his continuing service to the East Providence community, when he could have retired. In effect, in so doing, he saved the city from incurring expenses related to the chief's retirement, as well as hiring a replacement for him.

**3.** Section 45–19–1(a) reads in relevant part:
"Whenever any * * * fire fighter * * * of any city, town, fire district, or the state of Rhode Island is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties * * * the respective city, town, fire district, state of Rhode Island or Rhode Island Airport Corporation by which the * * * fire fighter * * * is employed, shall during the period of the incapacity, pay the * * * fire fighter * * * the salary or wage and benefits to which the * * * fire fighter * * * would be entitled had he or she not been incapacitated * * *."

fighters. The arbitrator used these two prior applications to determine that the parties had intended to incorporate the "Cancer Benefits for Fire Fighters" statute into the agreement.

After the arbitrator filed his award, the city filed a motion to vacate the award in Superior Court. The hearing justice determined that the arbitrator had "appropriately assessed the collective-bargaining agreement and state statutes and made appropriate findings of fact and conclusions of law." Accordingly, on May 12, 2006, the hearing justice denied the City's motion to vacate, from which it timely appealed.

## II

### Analysis

On appeal, the city argues that the arbitrator exceeded his authority by finding that the "Cancer Benefits for Fire Fighters" statute applied to its firefighters because (1) the city had established its own retirement system pursuant to P.L. 1925, ch. 715, and therefore was exempt from the provisions of the "Cancer Benefits for Fire Fighters" statute; (2) that implementation of the arbitrator's award would cause irreparable harm because the city had not contemplated nor funded the conferral of benefits under the "Cancer Benefits for Fire Fighters" statute to its firefighters; and (3) the application of the "Cancer Benefits for Fire Fighters" statute to East Providence created new injured-on-duty and pension benefits that were not the result of collective-bargaining. In response, Local 850 avers that the parties incorporated the IOD statute into their collective-bargaining agreement, that the "Cancer Benefits for Fire Fighters" statute amended the IOD statute, and that the plain language of the "Cancer Benefits for Fire Fighters" statute applies to all Rhode Island firefighters.

### A

### Standard of Review

 "The authority of the courts in this jurisdiction to review an arbitral award is statutorily prescribed and is limited in nature." *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers,* 945 A.2d 339, 344 (R.I.2008). Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity. *Pierce v. Rhode Island Hospital,* 875 A.2d 424, 426 (R.I.2005). "[A]s long as an arbitrator's award 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *Town of Coventry v. Turco,* 574 A.2d 143, 146 (R.I.1990) (quoting *Jacinto v. Egan,* 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978)).

 It is well settled that an arbitrator may "make rulings concerning the applicable law and * * * interpret the law according to the facts before him or her." *Vose v. Rhode Island Brotherhood of Correctional Officers,* 587 A.2d 913, 914 (R.I. 1991). "[L]ike a judge sitting without a jury, an arbitrator is called upon not only to make findings of fact but also to apply the law to the facts." *Id.* Not only may an arbitrator make rulings on the applicable law, but an arbitrator's award will be upheld even if he or she makes a mistake or error in interpreting the law. *Pier House Inn, Inc. v. 421 Corporation, Inc.,* 812 A.2d 799, 803 (R.I.2002). "[A]rbitrators may and should decide questions of relevant state law and the interpretation thereof in resolving a grievance brought pursuant [to] a [collective-bargaining agreement]." *Rhode Island Brotherhood of Correctional Officers v. State,* 643 A.2d 817, 821 (R.I.1994).

 This Court will overturn an arbitration award only "if the award was irrational or if the arbitrator manifestly disregarded the law." *Purvis Systems, Inc. v. American Systems Corp.*, 788 A.2d 1112, 1115 (R.I.2002). "[A] manifest disregard of the law requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" *North Providence School Committee*, 945 A.2d at 344 (quoting *Westminster Construction Corp. v. PPG Industries, Inc.*, 119 R.I. 205, 211, 376 A.2d 708, 711 (1977)). Rather, "[a] manifest disregard of the law occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it." *Id.* (citing *Purvis Systems, Inc.*, 788 A.2d at 1115).

 The city contends that the arbitrator exceeded his authority by construing the "Cancer Benefits for Fire Fighters" statute to be an amendment to the IOD statute. This argument ignores this Court's precedent that, in resolving grievances among parties to a collective-bargaining agreement, an arbitrator should decide questions of state law. *Rhode Island Brotherhood of Correctional Officers*, 643 A.2d at 821. First, it would be impossible for the arbitrator to resolve the dispute without looking to the "Cancer Benefits for Fire Fighters" statute because its application to East Providence firefighters is the central issue. Additionally, the parties' dispute also was based on whether Chief Moniz was entitled to injured on-duty sick time under the IOD statute, incorporated in Article X, Section 10.02 of the parties' collective-bargaining agreement. Thus, the arbitrator clearly was within his authority to review and interpret the relevant state law because the application of it was essential in resolving the parties' dispute.

 Next, the city argues that the arbitrator's award was irrational because conferring IOD benefits on firefighters diagnosed with cancer would cause the city irreparable fiscal harm. This argument is not persuasive. First, the "Cancer Benefits for Fire Fighters" statute specifically provides benefits under the IOD statute to cancer-stricken firefighters. Next, the parties collectively bargained for the benefits of the IOD statute. Finally, this Court has held that parties cannot waive the benefits under the IOD statute in the collective-bargaining process. *See Town of Burrillville v. Rhode Island State Labor Relations Board*, 921 A.2d 113, 121 n. 6 (R.I.2007) (citing *Vose*, 587 A.2d at 915). Therefore, the city's assertion that providing IOD benefits for cancer-stricken firefighters would cause irreparable harm is implausible, considering that the city not only was contractually, but statutorily, obligated to provide benefits to its firefighters who suffer on-duty injuries. Cancer, under the "Cancer Benefits for Fire Fighters" statute, is simply a type of on-duty injury for which firefighters are to be paid IOD benefits, along with the many other on-duty injuries that firefighters can suffer in the performance of their jobs. Thus, any argument that providing IOD benefits would cause the city irreparable fiscal harm is not persuasive.

### B

### Application of G.L. 1956 Chapter 19.1 of Title 45

 The city argues that the language of the "Cancer Benefits for Fire Fighters" statute limits its application to "a municipality that participates in the optional retirement plan for police officers and fire fighters provided in [45–21.2]" and that, because the city does not participate in the optional retirement program, its firefighters are not entitled to benefits under the provisions of the "Cancer Benefits for Fire Fighters" statute. Local 850 contends

that the language, "any fire fighter" within the "Cancer Benefits for Fire Fighters" statute should be construed to include any firefighter in any city or town regardless of whether that city or town participates in the optional retirement program. Section 45-19.1-1, entitled "Legislative findings," provides:

"(a) The general assembly finds and declares that by reason of their employment:

"(1) Fire fighters are required to work in the midst of, and are subject to, smoke, fumes, or carcinogenic, poisonous, toxic, or chemical substances;

"(2) Fire fighters are continually exposed to a vast and expanding field of hazardous substances through hazardous waste sites and the transportation of those substances;

"(3) Fire fighters are constantly entering uncontrolled environments to save lives and reduce property damage and are frequently not aware of potential toxic and carcinogenic substances that they may be exposed to;

"(4) Fire fighters, unlike other workers, are often exposed simultaneously to multiple carcinogens, and the rise in occupational cancer among fire fighters can be related to the rapid proliferation of thousands of toxic substances in our every day environment; and

"(5) The onset of cancers in fire fighters can develop very slowly, usually manifesting themselves from five (5) years to forty (40) years after exposure to the cancer-causing agent.

"(b) The general assembly further finds and declares that all of the previously stated conditions exist and arise out of or in the course of that employment."

Section 45-19.1-2 entitled, "Definitions," provides:

"The following terms when used in this chapter have the following meanings:

"(a) 'Disability' means a condition of physical incapacity to perform any assigned duty or duties in the fire department.

"(b) 'Fire department' means service groups (paid or volunteer) that are organized and trained for the prevention and control of loss of life and property from any fire or disaster.

"(c) 'Fire fighter' means an individual, paid or volunteer, who is assigned to a fire department and is required to respond to alarms and performs emergency action.

"(d) 'Occupational cancer' means a cancer arising out of his or her employment as a fire fighter, due to injury from exposures to smoke, fumes, or carcinogenic, poisonous, toxic, or chemical substances while in the performance of active duty in the fire department."

Section 45-19.1-3 entitled, "Occupational cancer disability for fire fighters," provides:

"(a) Any fire fighter, including one employed by the state, or a municipal fire fighter employed by a municipality that participates in the optional retirement for police officers and fire fighters, as provided in chapter 21.2 of this title, who is unable to perform his or her duties in the fire department by reason of a disabling occupational cancer which develops or manifests itself during a period while the fire fighter is in the service of the department, and any retired member of the fire department of any city or town who develops occupational cancer, is entitled to receive an occupational cancer disability, and he or she is entitled to all of the benefits provided for in chapters 19, 21 and 21.2 of this title and chapter 10 of title 36 if the fire fighter is employed by the state.

"(b) The provisions of this section apply retroactively in the case of any re-

tired member of the fire department of any city or town."

 "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996); *see also State v. Greenberg*, 951 A.2d 481, 489 (R.I.2008). "The plain meaning of the statute is the best indication of the General Assembly's intent." *Park v. Rizzo Ford, Inc.*, 893 A.2d 216, 221 (R.I.2006). Therefore, "when a statute is unambiguous on its face we do not search behind the language to determine legislative intent." *Angell v. Union Fire District of South Kingstown*, 935 A.2d 943, 946 (R.I.2007). It is only when a statute is ambiguous and susceptible to more than one interpretation does this Court have the responsibility to "glean the intent and purpose of the Legislature 'from a consideration of the entire statute, keeping in mind [the] nature, object, language, and arrangement' of the provision to be construed." *Algiere v. Fox*, 122 R.I. 55, 58, 404 A.2d 72, 74 (1979).

 Upon a reading of the statute, it is evident that the General Assembly intended to ensure that firefighters diagnosed with cancer receive injured on-duty benefits in accordance with the IOD statute, § 45–19–1, the Retirement of Municipal Employees statute, chapter 21 of title 45, the Optional Retirement for Members of Police Force and Fire Fighters statute, G.L. 1956 chapter 21.2 of title 45, and the Retirement System—Contributions and Benefits statute, G.L. 1956 chapter 10 of title 36. The enactment of the "Cancer Benefits for Fire Fighters" statute specifically designated cancer among firefighters as an on-duty illness, based on the General Assembly's findings that firefighters are exposed to "a vast and expanding field of hazardous substances" and that the "rise in occupational cancer among fire fighters can be related to the rapid proliferation of thousands of toxic substances." Section 45–19.1–1(a)(3)–(4). Simply put, the "Cancer Benefits for Fire Fighters" statute acknowledges the unfortunate fact that in the performance of their duties, firefighters develop cancer at a disproportionate rate, and provides a partial remedy by entitling them to "all of the benefits provided for in chapters 19, 21 and 21.2 of this title and chapter 10 of title 36." Section 45–19.1–3(a).

The city's argument that the General Assembly intended to restrict the "Cancer Benefits for Fire Fighters" statute to firefighters participating in the municipal retirement system is inconsistent with the express language of the statute. Nothing in § 45–19.1–3 restricts the statute's application to firefighters participating in the optional retirement plan. Indeed, the statute uses the all inclusive phrase, "any fire fighter." We find no merit in the city's contention that the statutory language, "including [a firefighter] employed by the state, or a municipal fire fighter employed by a municipality that participates in the optional retirement for police officers and fire fighters," limits its application. The word, "any," followed by the term, "including," is all encompassing. This language does not indicate any intent on the part of the General Assembly to restrict these cancer benefits to only certain firefighters. Had the General Assembly intended to limit the statute's application to municipal firefighters participating in the optional retirement program, it could have done so. *See Brown & Sharpe Manufacturing Co. v. Dean*, 89 R.I. 108, 116–17, 151 A.2d 354, 358 (1959) ("if the language of a statute is free from ambiguity and expresses a definite and sensible meaning, that meaning is conclusively presumed to be the one which the legislature intended"). Thus, we conclude that the language of the "Cancer

Benefits for Fire Fighters" statute expressly provides injured on-duty benefits provided by chapters 19, 21, and 21.2 of title 45, and chapter 10 of title 36.

In light of our reading of the "Cancer Benefits for Fire Fighters" statute, we conclude that the arbitrator did not exceed his authority in finding that the city is obligated to provide injured on-duty benefits to Chief Moniz. The "Cancer Benefits for Fire Fighters" statute explicitly provides injured on-duty benefits as governed by § 45–19–1 to firefighters who are diagnosed with cancer. Because of Chief Moniz's cancer diagnosis, he is entitled to have the forty-four days of sick leave at issue restored to him in accordance with § 45–19–1.

### III

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court and remand the file thereto.