DECISION
This case is before the Court on Plaintiff Town of Johnston's motion to vacate an arbitration award in favor of the International Brotherhood of Police Officers, Local 307 ("the Union") and the Union's motion to confirm the same arbitration award. For the reasons set forth herein, the Court denies the Town of Johnston's motion to vacate and grants the Union's motion to confirm the arbitration award.
 FACTS
Detective Raymond Pingitore joined the Town of Johnston Police Force on December 20, 1984. Detective Pingitore first requested retirement on April 10, 2007 after more than twenty-two years of service. In a series of letters or memoranda to the Town, many of which went unanswered, Detective Pingitore indicated that he wished to use his 240 accumulated sick days in order to reach a retirement date in summer 2008 — that is, he wished to discontinue working in the summer of 2007, go on sick leave for 240 days, and then retire in summer 2008. (See Arbitration Op. 18.)
On September 19, 2007, Police Chief Tamburini called Detective Pingitore into his office and informed the Detective that he was not to report to work any longer. In a letter a few days later, the Town informed Detective Pingitore that his retirement date was August 21, 2007 and *Page 2 
that his pension would be calculated based upon his twenty-two years of service. The Town would compensate Detective Pingitore for 120 days of accrued sick leave, but not for the other 120 days he had accumulated. Soon afterwards, Detective Pingitore filed a grievance with the Town relating to the calculation of his pension benefits and sick leave. The calculation of pension benefits and compensation for unused sick time are governed by the collective bargaining agreement ("CBA") between the Town and the Union. (See
Arbitration Op. 2.)
The grievance ultimately proceeded to arbitration. (Arbitration Op. 1.) After several hearings, the arbitrator rendered a signed, written award on October 6, 2008. (Arbitration Op. 1, 21.) The award was submitted to at least one of the parties. In relevant part, the arbitrator sustained Detective Pingitore's grievance and ordered the Town retroactively to place the Detective on sick leave for 240 days beginning August 21, 2007. (Arbitration Op. 21.)[1]
The relevant portions of the CBA read as follows:
 ARTICLE IX
 Section 1 — Sick Leave
 (A) Sick leave shall be granted at the rate of twenty (20) days per year on 1 July each year, cumulative to a maximum of one hundred twenty (120) days.
 (B) Any member with more than ten (10) years of service shall be granted additional cumulative sick leave at the rate of twenty (20) days per year, to a maximum of one hundred twenty (120) days. Any unused cumulative sick leave contained in this section shall be used solely for early retirement as per Section 3 of Article
 IX.
 . . .
 (E) All police officers will be allowed to accumulate unlimited sick leave for use due to an illness but will only be able to apply a maximum of up to one hundred twenty (120) days under (A) and up to an additional one hundred twenty (120) days (240 days maximum) under (B) toward retirement as described in Article IX, Section 3 — Use of Sick Leave on Retirement. *Page 3 
 Section 3 — Use of Sick Leave Upon Retirement
 (A) Upon retirement in good standing from the Town's employment, after a minimum of ten (10) years employment, the employee may elect to be paid in cash for any unused cumulative sick leave earned under Section 1(A) of this Article X.[2]
In the event that such employee does not elect to be paid in cash for said unused sick leave, said employee may elect to use any unused cumulative sick leave earned under Section 1(A), Article X for early retirement. Officers who elect to use sick leave under this section shall continue to accrue all benefits pursuant to this agreement except the clothing and maintenance allowances contained in Article VII.
 (B) If an employee intends to retire after his or her tenth (10th) year of employment for the Town of Johnston, said employee, upon retirement in good standing, may retire earlier than his or her anniversary date by utilizing the maximum cumulative sick leave days as earned in Section 1(A) and (B) of said Article IX if said employee does not elect cash payment thereunder.
 (C) In the event that employee retires after any year of service for the Town, said employee shall not be compensated for any pay or any other fringe benefits, including sick leave pay, but strictly shall be limited to the applicable provisions of Article X and any other retirement benefits covered under this Agreement. (C) Example: An employee has 12 years of service with the Town and wishes to retire. Said employee has 120 cumulative sick days under Section 1(A) and 40 days under Section 1(B). The employee may elect to cash under Section 1(A) and retire 40 days earlier than his or her twelfth (12th) anniversary of employment, or may not elect cash under Section 1(A) and retire 160 days earlier that [sic] his or her anniversary date (120 days under Section 1(A) plus 40 days under Section 1(B) would equal 160 days.)
 . . .
 ARTICLE XIV
 . . .
 Section 3 — Early Retirement Provisions
 Members of the Johnston Police may retire in accordance with the following provisions:
 . . .
 (B) 10-18 years
 If a police employee chooses to leave during this period . . . He/she will not be considered to have retired. . . .
 . . . *Page 4 
 (D) Early Retirement
 (1) After eighteen (18) years of service, a police officer may take an early retirement if he/she chooses to do so. . . . and sick days may be accumulated toward retirement up to a maximum of 120 days. . . .
 . . .
 (E) Retirement after 20 years
 If a member of the Police Department retires after twenty (20) years of service, then, he/she will retire with . . . the ability to purchase back military time, sick leave and buy back special time as indicated above . . . (Town of Johnston, Rhode Island and International Brotherhood of Police Officers Local 307 Contract Agreement for July 1, 2005 to June 30, 2008.)
In resolving the dispute between the parties, the arbitrator acknowledged and explained Article IX, sections 1(A), (B), and (E). (Arbitration Op. 18-19.) He recognized that Article IX, section 1(B) limits the use of sick days accumulated under section 1(B) to early retirement. (Arbitration Op. 19.) When the arbitrator reached Article IX, section 3(B) and the example in section 3(C), he concluded that these sections permitted individuals such as Detective Pingitore to use up to 240 accumulated sick days to reach or pass an anniversary date. (Arbitration Op. 19-21.) The arbitrator interpreted the CBA as drawing a distinction between those employees merely seeking early retirement and those seeking retirement before any anniversary date; thus, he concluded that Detective Pingitore could use all 240 accumulated sick days to reach or pass his next anniversary notwithstanding the fact that the Detective, who had more than twenty-two years' tenure on the job, was not retiring early within the meaning of the CBA. (Arbitration Op. 20-21.)
 STANDARD OF REVIEW
"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." City of East Providencev. International Association of Firefighters Local 850,982 A.2d 1281, 1285 (R.I. 2009). Thus, the Court reviews "arbitral awards under an *Page 5 
exceptionally deferential standard[.]" North Providence SchoolCommittee v. North Providence Federation of Teachers, Local920, 945 A.2d 339, 347 (R.I. 2008). Because the role of the judiciary in the arbitral process is "extremely limited[,]" the Superior Court will vacate an arbitrator's award "only in the rarest of circumstances." Pawtucket Fraternal Order of Police Lodge # 4v. City of Pawtucket, 869 A.2d 67, 69 (2005) (internal quotations omitted). Courts must vacate arbitral awards in the following circumstances:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13. Section 28-9-18(a).
An arbitrator exceeds his authority under § 28-9-18(a)(2) when the award does not "draw . . . its essence from the collective-bargaining contract or is not based on a pass[a]bly plausible interpretation thereof[.]" Rhode Island Brotherhood ofCorrectional Officers v. Department of Corrections,707 A.2d 1229, 1234 (R.I. 1998) (internal quotations omitted). Arbitrators may consult only appropriate sources, such as the contract between the parties and the "common law of the shop[,]" when resolving a grievance. State v. National Association ofGovernment Employees Local No. 79, 544 A.2d 117, 119 (R.I. 1988);Jacinto v. Egan, 120 R.I. 907, 912; 391 A.2d 1173, 1176
(1978).
The Court must vacate an arbitration award where the arbitrator manifestly disregards a contractual provision. Town of NorthProvidence v. Local 2334 International Association of FireFighters, 763 A.2d 604, 606 (R.I. 2000). The arbitrator must interpret the contract so as to give meaning to the parties' intentions in entering into the contract. Id. at 588. "When the *Page 6 
arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."Id. at 589 (internal quotations omitted.)
Even if the arbitrator makes a mistake in interpreting the law, the Court will uphold the award. City of East Providence, 982 A.2d at 1285. However, "if the arbitrator manifestly disregard[s]" the law or arrives at an irrational result, the Court will vacate the arbitral award. Id. at 1286. A manifest disregard of the law is more than a mere error in the law or failure to understand or apply the law correctly. Id. "Rather, a manifest disregard of the law occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it." Id. (internal quotations omitted.) An arbitrator's factual findings are reviewable only when they are "completely irrational." Belanger v. Matteson, 115 R.I. 332, 356;346 A.2d 124, 138 (1975).
Section 28-9-16, the statute governing the enforceability of arbitration awards, states:
 To entitle the award to be enforced, as prescribed in this chapter, it must be in writing, within the time limited in the submission or contract, if any, subscribed by the arbitrator or arbitrators making it, and either filed in the office of the clerk of the court having jurisdiction as provided in § 28-9-14 or delivered to one of the parties or his or her attorney.
Upon timely application, the Court must confirm any arbitration award that meets the criteria in § 28-9-16, is otherwise enforceable, and has not been "vacated, modified, or corrected." Sections 28-9-13,-16 to-17.
 ANALYSIS I. The Town's Motion To Vacate
This case gives the Court considerable pause. The Court, reading the CBA as a whole and applying the principles of contract law, would not interpret the CBA the way that the arbitrator interpreted it. However, in light of the exceptionally deferential standard by which the Court must review arbitration awards, the Court is compelled to deny the Town's motion to *Page 7 
vacate. See North Providence School. Committee., 945 A.2d at n. 10 (explaining that "[a]lthough it is possible that one or more of the members of this Court might not have reached the same result or engaged in the same process of reasoning as did the arbitrator in this case, the operative standard of review narrows the judicial role . . .")
The Town argues that the arbitrator exceeded his authority by manifestly disregarding provisions of the CBA, failing to read the provisions of the contract in harmony with each other, and fashioning an award that is irrational and not based on a passably plausible interpretation of the CBA. The Court disagrees that the arbitration decision manifestly disregards provisions of the CBA or reads them in disharmony with the rest of the contract. The arbitrator acknowledged the provisions of the CBA that limit the use of sick days accrued under Article IX, section 1(B) to early retirees and the definition of early retirement in Article XIV, section 3(D). (Arbitration Op. 16, 19.) However, the arbitrator found that Article IX, section 3(B) created a separate rule for individuals who do not retire on their anniversary dates. (Arbitration Op. 19-20.) In fact, Article IX, section 3(B) and the example in 3(C) do not specify that only early retirees may use sick leave to reach or pass an anniversary date — rather, it states that an employee who "intends to retire after his or her tenth (10th) year of employment . . . may retire earlier than his or her anniversary date by utilizing the maximum cumulative sick leave days as earned in Section 1(A) and (B) of said Article IX if said employee does not elect cash payment thereunder." (CBA Article IX § 3(B) (emphasis added.)) The arbitrator appears to have interpreted this lack of limiting language in section 3(B) of the CBA, the "and" linking the cumulative unused leave earned in Article IX, sections 1(A) and (B), and the significance that reaching an anniversary date has for retirement benefit calculations as permitting individuals with twenty-two years of tenure to use unused sick days to pass an anniversary date. (See Arbitration Op. 19.) *Page 8 
At first blush, the arbitrator's interpretation of Article IX, section 3 of the CBA appears to conflict with and contradict Article IX, section 1(B), which limits the use of sick leave earned and accumulated under that section to early retirees. However, the arbitrator's interpretation side-steps contradiction by reading the CBA as providing two separate rules for two separate scenarios — Article IX, section 1 for early retirees and Article IX, section 3 for any retiree who does not retire on his or her anniversary date. The arbitrator thus reasoned that the various contract provisions were harmonious. While the arbitrator's contract interpretation is not the most obvious one, it neither disregards contractual provisions nor requires the provisions to coexist discordantly.
Arbitration awards that are based on a "passably plausible" interpretation of the contract and draw their "essence from the contract" are within the arbitrator's authority. Coventry v.Turco, 574 A.2d 143, 146 (R.I. 1990). The award in the instant case was based on an interpretation of the CBA. The arbitrator discussed the CBA at length. The Town makes a somewhat off-handed objection to the arbitrator's reliance on "an alleged pseudo past practice" in reaching his decision. (Pl.'s Mem. 11.) The Town bases its protest on the grounds that "no evidence was introduced throughout this proceeding to support a past practice theory." (Pl.'s Mem. 11.) The Court does not second-guess the arbitrator's factual finding that there was a past practice of allowing retirees to use accumulated sick leave to reach or pass an anniversary date absent "complete irrationality," which it does not find here.See Belanger, 115 R.I. at 356, 346 A.2d at 138. While many readers of the CBA would not arrive at the same interpretation as the arbitrator, the arbitrator's award nonetheless meets the very low bar of being "passably plausible." *Page 9 
The Town relies on Coventry v. Turco for the contention that the arbitrator exceeded his authority by rewriting rather than interpreting the CBA. 574 A.2d at 147. In Turco, the Rhode Island Supreme Court affirmed the Superior Court's vacation of an arbitration award on the grounds that the arbitrator included lump sum reimbursement for unused sick leave (accumulated over many years but dispersed at retirement time) in the retiree's base pay for the purposes of calculating retirement benefits. Id. at 144-45. The Turco CBA provided a non-exhaustive list of sources of income to be included in calculating retirement benefits.Id. at 144. The CBA divided sick leave days into three categories: the first 120 days would be paid for at the time of retirement in a lump sum; the next sixty days presumably would carry over to be used for actual illness but could not be exchanged for payment; and any accumulated sick days in excess of 180 would be paid for at a reduced rate each December. Id. at 147. The parties' drafting of the CBA divided sick leave into days earned and paid for that year and days earned over a long span of time and paid for in a different year. Id. By ignoring this distinction and finding that the timing and manner of payment was irrelevant to the calculation of retirement benefits, the arbitrator effectively rewrote the contract; therefore, his decision did not "draw its essence from the contract[.]" Id. By recognizing but disregarding the implied distinction between benefits earned and paid in the same year and benefits earned over many years and paid at the time of retirement, the arbitrator disregarded the provisions that provided different payment for different kinds of sick days.Id.
The Court holds that the arbitrator in this case did not rewrite the CBA as the arbitrator in Turco had. The distinction between the instant case and Turco lies in whether the arbitrator disregarded contractual provisions. In Turco, the flaw in the arbitrator's reasoning was that he acknowledged but counted as irrelevant provisions of the CBA that distinguished between sick *Page 10 
days based on the timing and manner of accrual and reimbursement.574 A.2d at 146-47. In the instant case, the arbitrator does not suggest that Article IX, section 1 is irrelevant to the analysis. Rather, he reads the CBA as treating two distinctive scenarios — early retirement versus retirement after an anniversary date. InState v. Rhode Island Alliance of Social Service Employees, Local589, 861 A.2d 455, 458 (R.I. 2004), our high court noted that it "might well have interpreted [a CBA] differently," but it affirmed the Superior Court's decision not to vacate the arbitration award because the award was a passably plausible interpretation of the CBA, did not reach an irrational result, and drew its essence from the CBA. Id.
The Town then argues that the arbitrator rewrote the contract by allowing Detective Pingitore to "run out" his sick leave time to pass his anniversary date. (Pl.'s Mem. 8.) The Town contends that the award reaches an "absurd" result because an "officer is either on active duty or not." (Pl.'s Mem. 8.) Article IX, section 3(C) of the CBA allows retirees to either elect cash payment for accumulated sick days or use them to retire before an anniversary date. Clearly, the inclusion of this example in the CBA indicates that the parties envisioned some circumstances in which an officer would not be "either on active duty or not." (CBA Article IX, § 3(C);see also Pl.'s Mem. 11.) Therefore, the arbitrator's order to allow Detective Pingitore to "run out" his sick leave did not rewrite the contract.
Lastly, the Town argues that the arbitrator exceeded his authority by crafting an irrational award. (Pl.'s Mem. 4.) The Court acknowledges that the arbitrator's interpretation of the CBA is not the interpretation that most learned readers would conjure; however, the award is not irrational. Again, deference is to be provided to the award of an arbitrator, and the court's role on review is limited. *Page 11 
 II. The Union's Motion To Confirm
The arbitration award meets the criteria for confirmation set forth in §§ 28-9-13,-16, and-17. The award was timely, in writing, signed by the arbitrator, and delivered to at least one of the parties. See § 28-9-16. It has not been "vacated, modified, or corrected." See § 28-9-17. Neither party asserts that the award is unenforceable under § 28-9-13. Therefore, the Court grants the Union's motion to confirm the arbitration award.
 CONCLUSION
The arbitration award in this case tests the bounds of what the Court must confirm under chapter 28-9 of the General Laws. The arbitrator reached a contract interpretation that many, including this Court, probably would not reach in the same circumstances. Nonetheless, the arbitration decision did not reach an irrational result, manifestly disregard contractual provisions, require a disharmonious reading of the various contract provisions, or fail to draw its essence from the CBA. In light of the presumption of validity accorded to arbitral awards and the extremely deferential standard of review set forth by the statute and by our State's case law, the Court denies the Town's motion to vacate the arbitral award and grants the Union's motion to confirm.
[1] The arbitrator ruled in favor of the Town with regards to Detective Pingitore's claim that the Town improperly compelled him to retire. The Union does not move to vacate this portion of the arbitrator's award, nor does the Town seek judicial confirmation under G.L. 1956 § 28-9-17.
[2] The Town explains that references to Article X in these excerpted sections of the CBA are typographical errors and should read Article IX. (Pl.'s Mem. n. 2.)