DECISION
This case is before the Court on the State of Rhode Island Department of Corrections' ("DOC") motion to vacate a June 13, 2008 arbitration award. The Rhode Island Brotherhood of Correctional Officers ("RIBCO") simultaneously moves to confirm. The arbitrator issued an award declaring that the DOC would violate the Collective Bargaining Agreement if it made changes to annual weapons qualification requirements without first obtaining majority approval from the Training Committee. For the reasons set forth below, the Court upholds the Arbitration Award.
 I Facts and Travel
The DOC and RIBCO have long been parties to a Collective Bargaining Agreement which contains provisions addressing a Training Committee. "The Training Committee includes two representatives selected by each party who are charged with submitting a `comprehensive program pertinent to the training of Correctional Officers' that must include certain requirements. . . ." (Award at 4.) Notably, in the event of a disagreement between the four members of the *Page 2 
Training Committee, the language of the agreement "does not include a mechanism for resolving a deadlock. . . ." Id.
The present dispute revolves around annual weapons qualification requirements as related to correctional officers. In 2007, faced with State fiscal problems, the General Assembly adopted G.L. 1956 §§ 11-47-17 and 11-47-17.1. As a result, the statutorily mandated time period between correctional officer weapons qualification was changed from one year to two. Faced with a scenario in which yearly qualification was no longer mandated by statute, the DOC considered video handgun training modules to supplement the years between the required qualifications. The DOC ultimately selected and purchased a computer simulation program and proposed the system to the Training Committee. After discussing the option at several meetings, the Training Committee's four members were deadlocked on the issue of whether the computer simulation program should be implemented in the off years between weapons qualification. See id. at 7.
Having reached a deadlock, the parties submitted the instant dispute to arbitration. The arbitrator framed the pertinent issue as follows:
 Would it violate the collective bargaining agreement for the [DOC] to change the weapons qualification component of the [DOC] in-service training program if a majority of the Training Committee has not adopted that change?
After hearing, the Arbitrator issued a written decision on June 13, 2008. Therein, the Arbitrator determined the grievance to be arbitral and found that the CBA forbids the DOC to implement a training change when the Training Committee is deadlocked.[1] *Page 3 
The present Arbitration Award recognized that the issue had been previously decided; and the Arbitrator, therefore, declined to depart from the prior holding. Thus, the Award indicated that the dispute was arbitral and that the DOC would be violating the CBA if it changed the weapons qualification training program without the approval of a majority of the Training Committee.
Following the issuance of the Award, the DOC filed the present motion to vacate. It argues that G.L. 1956 § 42-56-10(14), which indicates that the DOC's director shall "[e]stablish training programs for employees of the department," renders the dispute non-arbitrable. The DOC also argues that the plain language of §§ 11-47-17 and 11-47-17.1 mandate that Correctional Officers must undergo weapons qualification every two years. In pertinent part, the statutes indicate "[q]ualification under this section will be required at periods of not more than one year, except for correctional officers who must repeat this qualification every two (2) years." Section 11-47-17.1. The DOC argues that this language does not permit correctional officer weapons qualification to occur every year.
The RIBCO conversely argues that § 42-56-10(24) precludes the DOC's initial argument. In pertinent part, the statute indicates that:
 the validity and enforceability of the provisions of a collective bargaining agreement shall not be contested, affected, or diminished, nor shall any arbitration award be vacated, remanded or set aside on the basis of an alleged conflict with this section or with any other provision of the general laws.
Thus, RIBCO argues that even though § 42-56-10(14) gives the DOC power to establish training programs, the arbitration award cannot be vacated on these grounds. RIBCO also argues that §§ 11-47-17 and 11-47-17.1 do not prohibit correctional officers from repeating weapons qualification every year and, thus, do not conflict with the CBA and the Arbitration Award. *Page 4 
 II. Standard of Review
"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." Cityof East Providence v. Int'l Ass'n of Firefighters Local 850,982 A.2d 1281, 1285 (R.I. 2009). Thus, the Court reviews "arbitral awards under an exceptionally deferential standard[.]"North Providence School Comm. v. North Providence Federation ofTeachers, Local 920, 945 A.2d 339, 347 (R.I. 2008). Courts must vacate arbitral awards in the following circumstances:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13. G.L. 1956 § 28-9-18(a).
An arbitrator exceeds his authority under § 28-9-18(a)(2) when the award does not "draw . . . its essence from the collective-bargaining contract or is not based on a pass[a]bly plausible interpretation thereof[.]" Rhode IslandBrotherhood of Correctional Officers v. Department ofCorrections, 707 A.2d 1229, 1234 (R.I. 1998) (internal quotations omitted). "As a general rule, when a party claims that the arbitrators have exceeded their authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made."Coventry Teachers' Alliance v. Coventry School Comm.,417 A.2d 886, 888 (R.I. 1980) (internal citation omitted).
"A reviewing court must determine whether the arbitrator has resolved a grievance by considering the proper sources, such as the contract in effect between the parties." State v. Nat'l *Page 5 Ass'n of Government Employees Local No. 79,544 A.2d 117, 119 (R.I. 1988). "Judicial reversal of an arbitrator's award solely on the ground of a reviewing court's disagreement with the arbitrator's construction of the contract is prohibited."Buttie v. Norfolk Dedham Mut. Fire Ins. Co.,995 A.2d 546, 549 (R.I. 2010) (internal quotation omitted). Such a reversal "would not only nullify the bargain made by the parties[,] but also threaten the strong public policy that favors private settlement of grievance disputes arising from collective bargaining agreements." Belanger v. Matteson,346 A.2d 124, 355-356 (R.I. 1975).
G.L. 1956 § 28-9-16, the statute governing the enforceability of arbitral awards, states:
 To entitle the award to be enforced, as prescribed in this chapter, it must be in writing, within the time limited in the submission or contract, if any, subscribed by the arbitrator or arbitrators making it, and either filed in the office of the clerk of the court having jurisdiction as provided in § 28-9-14 or delivered to one of the parties or his or her attorney.
Upon timely application, the Court will confirm an award that meets the criteria in § 28-9-16, is otherwise enforceable, and has not been "vacated, modified, or corrected." G.L. 1956 §§ 28-9-13, and 17.
 III. Analysis
At the outset, this Court reiterates that a "limited scope of judicial review of arbitration awards by the Superior Court is essential to ensure that parties may benefit from arbitration as an informal, expedient alternative to litigation in the court system."Purvis Systems, Inc. v. American Systems Corp.,788 A.2d 1112, 1118 (R.I. 2002). For the foregoing reasons, the Court declines to vacate the arbitral award at issue. *Page 6 
a. Arbitrability
The DOC's argument that § 42-56-10 prevents the arbitration of the present dispute is not persuasive. Although § 42-56-10(14) specifically provides that the director of the DOC has the authority to "[e]stablish training programs for employees of the department," § 42-56-10(24) prevents a party from challenging an arbitration award based on an alleged conflict with this power. It specifically states that no "arbitration award [shall] be vacated, remanded or set aside on the basis of an alleged conflict with this section or with any other provision of the general laws." Section 42-56-10(24). The Arbitrator specifically recognized this principle when he determined the grievance to be arbitral. (See Award at 14.) Similarly, this Court sees no reason to stray from § 42-56-10(24)'s clear mandate. The present Award cannot be vacated on the basis of an alleged conflict with § 42-56-10. As such, the present dispute was properly submitted to arbitration despite § 42-56-10's specific enumeration of the DOC's powers.
b. Effect of a Tie
The underlying issue before the Arbitrator was relatively simple. He sought to determine the effect of a tie vote by the Training Committee. In doing so, he noted that the question had "already been decided in prior arbitrations between the parties." (Cochran Award at 15.) Thus, the Arbitrator based his Award on "the reasoning of Arbitrator Boulanger," and decided that "the [DOC] cannot implement any changes in the weapons qualification component that have not first been adopted by a majority of the Training Committee." Id. "In the absence of an express agreement or a requirement by statute, an arbitrator is not required to set forth any findings of fact and conclusions of law supporting an award."Pierce v. Rhode Island Hosp., 875 A.2d 424, 427 (R.I. 2005) (quoting Westminster Construction Corp. v. PPG Industries,Inc., 119 R.I. 205, 208-10, *Page 7 376 A.2d 708, 710 (1977). Thus, simply relying on the rationale of a previous arbitration decision is not fatal.
Instead, "[a]n arbitrator has the inherent power to fashion an appropriate remedy as long as the award draws its essence from the contract and is based upon a `passably plausible' interpretation of the contract." Hart Engineering Co. v. Pawtucket Water SupplyBd., 560 A.2d 329, 330 (R.I. 1989) (internal quotation omitted). "[W]hen a party claims that [an] arbitrator [has] exceeded [his] authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made." Feibelman v. F.O., Inc., 604 A.2d 344, 345 (R.I. 1992) (quoting Coventry Teachers' Alliance, 417 A.2d at 888). Here, the Arbitrator cited the CBA at length. Specifically, Section 31.2 of the CBA indicates that "a training committee . . . shall submit a comprehensive program pertinent to the training of Correction Officers." Upon review, this Court is required to make "every reasonable presumption in favor of the award." Coventry Teachers' Alliance,417 A.2d at 888 (internal citation omitted). When doing so, this Court is satisfied that "the award draws its essence from [Section 31.2 of] the contract" by requiring a majority vote of the Training Committee in order to properly implement changes to the training program. Hart Engineering Co.,560 A.2d at 330 (internal quotation omitted). In essence, the Arbitrator, (in line with the Arbitrator before him, interpreted Section 31.2 to mean that a majority vote of the Training Committee is required before changes may be implemented. Because such an interpretation is "based upon a `passably plausible' interpretation of the contract," it is not a proper ground on which to vacate the Award. Id. *Page 8 
c. §§ 11-47-17 and 11-47-17.1
The final aspect of the present dispute involves the interaction of Section 31.3 of the CBA with the DOC's need to obtain majority approval from the Training Committee before implementing changes to the weapons qualification system. Section 31.3 of the CBA mandates that "[t]he time frame for [weapons qualification] shall be one (1) year from the date of the officer's last qualification. . . ." Because the present CBA already requires the yearly qualification of correctional officers, a majority vote of the Training Committee would be required to change to a two year system. However, the DOC's contends that §§ 11-47-17 and 11-47-17.1 directly contravene the CBA and therefore require this Court to vacate the Arbitration Award. As previously mentioned, §§ 11-47-17 and 11-47-17.1 provide that "[q]ualification . . . will be required at periods of not more than one year, except for correctional officers who must repeat this qualification every two (2) years." Section 11-47-17.1.
In his Award, the Arbitrator specifically stated
 I do not read R.I.G.L. Section 11-47-17 and 11-47-17.1 to say that weapons qualifications for CO's [sic] can only occur every two years. Rather, I read those sections to create an exception to the required annual qualification for other kinds of law enforcement officers. Therefore, although the [DOC] is not obligated to have CO's [sic] complete weapon qualification each year, I do not find it is statutorily precluded from doing so.
This Court is mindful that "arbitrators may and should decide questions of relevant state law and the interpretation thereof in resolving a grievance brought pursuant a CBA." Rhode IslandBroth. of Correctional Officers v. State,643 A.2d 817, 821 (R.I. 1994). Moreover, Even if the arbitrator makes a mistake in interpreting the law, the court will uphold the arbitral award. City of East Providence, 982 A.2d at 1285. However, "if the arbitrator manifestly disregard[s]" the law or arrives at an irrational result, the Court will vacate the arbitral award. Id. at 1286. A *Page 9 
manifest disregard of the law is more than a mere error in the law or failure to understand or apply the law correctly.Id. With these principles in mind, the Court is unable to find that the Arbitrator's award is inconsistent with state law. The Arbitrator specifically indicated that his interpretation of the relevant statutes did not preclude the possibility that the weapons qualification could occur more often than every two years. These are the types of interpretations arbitrators are frequently called upon to make. See Rhode Island Broth. of Correctional Officers,643 A.2d at 821. Even if this Court were convinced that the Arbitrator made a mistake in this interpretation, it should nonetheless uphold the award. See City of East Providence,982 A.2d at 1286. Here, there is no indication that the Arbitrator exhibited a manifest disregard for the law, and his decision will therefore be upheld. See id. Thus, the Arbitrator was well within his power and authority when making the present award, and the Court therefore declines the motion to vacate the award based on an alleged disregard for the state law.
 IV. Conclusion
Based on the foregoing, this Court confirms the arbitration award in its entirety. The motion to vacate is denied.
[1] Since the early 1970s when the Training Committee language was included in the CBA, there have been several disputes between the parties about the Training Committee's function. In 2004, a previous arbitration determined that where a majority of the Training Committee had not adopted a change, the DOC could not change the training program without violating the CBA. See id. at 5. Thus, according to the previous arbitration awards, "any proposed change to the existing training program must be adopted by at least three members of the Training Committee."Id.