DECISION
This matter is before the Court on David Mielke's motion to confirm an arbitration award.
 I. FACTS TRAVEL
In May of 2005, South County Post Beam, Inc. ("SCPB") and David Mielke engaged in talks concerning Mr. Mielke's hiring of SCPB to construct a timber frame structure on Mr. Mielke's property. Thereafter, SCPB drafted an "Agreement For Construction," that it sent to Mr. Mielke on May, 10, 2005. The opening language of that Agreement specified as follows:
 AGREEMENT FOR CONSTRUCTION AGREEMENT made this ____ day of ____ in the year 2005, by and between SOUTH COUNTY POST AND BEAM, INC., a Rhode Island Corporation of 521 Liberty Lane, West Kingston, Rhode Island, hereinafter called ("Builder/Contractor"); and David Mielke and Ginger Chapin, 15 Old Stone Bridge, Rd, Cos Cob, Connecticut, 06087 hereinafter called ("Owner").
 WHEREAS the Owner desires to retain Contractor to furnish all of the material and perform all the labor necessary in connection with the timber frame portion of the Owner's building situated on 15 Old Stone Bridge Rd, in the Town of Cos Cob, State of Connecticut hereinafter called (the "Project"); and *Page 2 
 WHEREAS the parties have reached agreement with respect to the terms and conditions of their relationship in connection with the Project,
 NOW THEREFORE, in consideration of the covenants and conditions set forth herein and with the intent to be bound legally thereby, it is hereby agreed as follows:
Following this opening language were nine pages of terms, unique to the work that SCPB was to perform for Mr. Mielke, and a diagram of the structure SCPB was to construct.
Also within the Agreement was an itemized payment schedule for the work SCPB was to perform. This schedule contained, among other provisions, that "Upon signing" "Owner shall pay Contractor" "$15,000." The agreement also contained a provision labeled "12. Dispute Resolution;" that provision is reproduced below in its entirety:
 The parties shall endeavor to resolve their disputes by mediation, which shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Claims, disputes and other matters in question arising out of or relating to the Contract that are not resolved by mediation shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrator or arbitrators shall be final and judgment may be entered upon it in accordance with Rhode Island law. Pending final resolution of a claim, including arbitration, unless otherwise agreed in writing, the Contractor shall proceed diligently with performance of the Agreement and the Owner shall continue to make payments in accordance with Paragraph 3.
Upon receiving SCPB's proposed Agreement, Mr. Mielke dated and signed the Agreement. Mr. Mielke then mailed SCPB a letter stating, "Enclosed is the signed contract and first installment payment for our Timber Frame project."[1] The signed Agreement and the first installment of $15,000 "due upon signing" were enclosed. SCPB received the signed agreement, *Page 3 
stamped, dated, initialed it "Received" and retained the Agreement in its files; SCPB also accepted Mr. Mielke's payment. However, SCPB never signed the last page of the agreement in the space provided for it's signature.
On July, 26, 2005, SCPB sent to Mr. Mielke a "Change Order" to revise the start date of the project. The Change Order was drafted by SCPB and as printed on South County Post Beam, Inc.'s letterhead. Included in the Change Order was the statement "The project will follow the same Estimated Schedule in Section 1 of the signed 5/12/05[2] contract."
Thereafter, SCPB commenced work on the project. On three separate occasions, SCPB sent Mr. Mielke billing invoices for work SCPB had performed on the project.[3] All three invoices were printed on South County Post Beam Inc.'s letterhead and began by stating, "Per approved and signed contract agreement dated May 11, 2005.[4]
Scheduled Payment Terms of Project: . . . Following this language were charges based on the "Phase" of the project that had been completed. Each "Phase" corresponded with a payment amount set out in the "Payment Schedule" in Section 3 of the Agreement. The first invoice, dated September 13, 2005, recognized SCPB's receipt of Mr. Mielke's $15,000 installment for payment due "Upon Signed Contract." The invoices also contain charges and evidence payments made by Mr. Mielke to SCPB for Phases B, C, and D of the "Contract." Additionally a provision listing the amount "Billed to Date of Total Contract" is contained in each invoice.
At some point in time, a dispute arose between Mr. Mielke and SCPB concerning SCPB's work on the project. Thereafter, pursuant to the Agreement, Mr. Mielke filed an arbitration claim with the American Arbitration Association ("AAA"). The AAA conducted *Page 4 
hearings in September of 2009 and entered an Arbitration Award in favor of Mr. Mielke for the amount of $20,957.50. Mr. Mielke now seeks to confirm this Award under G.L. 1956 § 10-3-11. SCPB's position is that the arbitration clause that Mr. Mielke relies upon does not satisfy § 10-3-2 because it is not contained within a written contract, that the agreement between the parties is not a contract because SCPB never signed it. For the reasons set forth herein, this Court disagrees.
 II. ANALYSIS A. The Agreement to Arbitrate
Under G.L. 1956 § 10-3-2,
 "When clearly written and expressed, a provision in a written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two (2) or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . ."
SCPB argues that the statutory requirement for a "written contract" or "agreement in writing" should be read so as to also require a signature. This position ignores the fact that "well-defined words and phrases in the common law [carry] over to statutes dealing with the same or similar subject matter," and "a statute should not be construed as altering a common-law rule farther than the words of the statute import." 2 B.Sutherland Stat. Const. § 50:3 (7th Ed.)
Had the legislature intended to create a signature requirement, they certainly had the opportunity to do so. The legislature chose not to include such a requirement, and Rhode Island courts have recognized that parties can manifest assent to written agreements by means other than signature alone. See O.Ahlborg Sons, Inc. v. Interior Systems, Inc.,528 A.2d 739, 742 (R.I. 1987) ("Ahlborg signified its acceptance of the written and executed contract not only by *Page 5 
signing it but also by paying over to Interior a very substantial sum of money . . . Ahlborg communicated its assent and acceptance of the contract by performing several express acts called for in the agreement that it had signed.")
SCPB would have this Court read Ahlborg as distinguishable on the ground that Ahlborg involved an agreement that was signed. However, such a reading ignores our Supreme Court's attention to the fact that the actions of Ahlborg, and not merely his signature, manifested his assent to the agreement. Moreover, the position of our Supreme Court inAhlborg, is certainly not novel. The Restatement (Second) Of Contracts § 19 (1981) recognizes that, "[t]he manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act." However, "[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents."Id. "So far as the common law is concerned . . . there need be no signatures unless the parties have made them necessary at the time they expressed their assent." 1 A. Corbin, Contracts
31 at 114 (1963).
As was the case in Ahlborg, SCPB here has communicated its assent to the terms of the contract through actions. SCPB drafted the terms of the Agreement, sent that Agreement to Mr. Mielke, and received the signed Agreement along with Mr. Mielke's first installment of $15,000 "due upon signing." SCPB then stamped, dated, initialed, and retained the contract. Furthermore, SCPB accepted Mr. Mielke's payment. At no point did SCPB indicate to Mr. Mielke in any way that it was rejecting the signed Agreement Mr. Mielke had returned. In fact, on four separate occasions SCPB represented to Mr. Mielke that the Agreement was signed and approved.[5] *Page 6 
Additionally, after depositing Mr. Mielke's initial payment of $15,000 that was "due upon signing," SCPB performed the work required under the contract. As SCPB performed each "Phase" of the work detailed under the contract, it demanded Mr. Mielke make the required payments for that "Phase" in accordance with the payment schedule of the contract. In this manner, SCPB billed Mr. Mielke $113,000, each billing invoice containing the statement that the bills were "per [the] approved and signed contract agreement dated May 11, 2005." Mr. Mielke made the payments SCPB demanded "per the approved and signed contract," and SCPB accepted those payments.
Until this dispute arose, both parties consistently acted in conformity with the procedures set by the contract. Now SCPB, who knowingly and intentionally took actions that demonstrated its acceptance of the terms of the contract, who demanded Mr. Mielke make payments in accordance with those terms, and who accepted those payments, asserts that no such contract exists because SCPB never signed the Agreement. This Court cannot accept such an argument.
SCPB clearly manifested its assent. In addition, SCPB represented to Mr. Mielke that the contract was approved and required Mr. Mielke to perform its obligations under the contract. To hold that such a contract is invalid until SCPB signs it, would be to place every signatory to an agreement at the mercy of the last party to sign, who would remain free to deny the agreement whenever he or she chooses. In today's world, where contracts are mailed, faxed, e-mailed, and digitally formed, parties must be able to rely on the representations and the actions of those they contract with.
As a matter of contract law and in accordance with public policy, this Court finds that a valid written contract containing an arbitration clause exists in this case. *Page 7 
 B. Estoppel
Under the doctrine of estoppel in pais, this Court further finds that SCPB is estopped from denying the existence of a signed agreement.
 For equitable estoppel, or estoppel in pais, to apply, the following elements must be established: `first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury.' Providence Teachers Union v. Providence School Board, 689 A.2d 388, 391-92 (R.I. 1997) (quoting Lichtenstein v. Parness, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953)).
 Moreover, `[t]he key element of an estoppel is intentionally induced prejudicial reliance. East Greenwich Yacht Club v. Coastal Resources Management Council, 18 R.I. 559, 568, 376 A.2d 682, 686 (1977) (citing Raymond v. B.I.F. Industries, Inc., 112 R.I. 192, 198-99, 308 A.2d 820, 823 (1973)). El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1233-1234 (R.I. 2000)
In this case, four affirmative representations were made by SCPB to Mr. Mielke that the Agreement was signed. First, the Change Order of July 26, 2005 stated, "[t]he project will follow the same Estimated Schedule in Section 1 of the signed5/12/05 contract." (Emphasis added). Second, third, and fourth, the billing invoices dated September 13, 2005, December 12, 2005, and January 5, 2005, all state, "[p]er approved and signed contract agreement
dated May 11, 2005."[6] (Emphasis added). These representations, particularly those on the billing invoices, were directed at Mr. Mielke for the purpose of inducing Mr. Mielke to act, specifically, to induce Mr. Mielke to make the requested payments. Therefore, the first requirement of estoppel inpais has been satisfied. *Page 8 
It is undisputed that Mr. Mielke did, in fact, make the requested payments to SCPB. Furthermore, at the time Mr. Mielke made these payments, it was clearly represented to Mr. Mielke that those payments were made under the terms of "the approved and signed contract." The terms of that contract provide Mr. Mielke with certain rights and requirements. SCPB now wishes to deny Mr. Mielke his right under the contract after inducing Mr. Mielke toperform his requirements under the contract. This is precisely the type of prejudicial reliance that estoppel in pais is intended to prevent.
As both affirmative representations and intentionally induced prejudicial reliance are clearly present here, the doctrine of estoppel in pais applies, and SCPB is estopped from denying the existence of an approved and signed contract.
 C. Binding Arbitration
"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." Cityof East Providence v. International Association of FirefightersLocal 850, 982 A.2d 1281, 1285 (R.I. 2009). Thus, the court reviews "arbitral awards under an exceptionally deferential standard[.]" North ProvidenceSchool Committee v. North Providence Federation of Teachers, Local920, 945 A.2d 339, 347 (R.I. 2008).
G.L. 1956 § 28-9-16, the statute governing the enforceability of arbitral awards, states:
 To entitle the award to be enforced, as prescribed in this chapter, it must be in writing, within the time limited in the submission or contract, if any, subscribed by the arbitrator or arbitrators making it, and either filed in the office of the clerk of the court having jurisdiction as provided in § 28-9-14 or delivered to one of the parties or his or her attorney. *Page 9 
This Court is well aware that "[t]he limited scope of judicial review of arbitration awards by the Superior Court is essential to ensure that parties may benefit from arbitration as an informal, expedient alternative to litigation in the court system."Purvis Systems, Inc. v. American Systems Corp.,788 A.2d 1112, 1118 (R.I. 2002). Moreover, "when a party claims that [an] arbitrator[has] exceeded [his] authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made." Id. (quotingCoventry Teachers' Alliance v. Coventry School Committee,417 A.2d 886, 888 (R.I. 1980)). "Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." City of East International Association ofFirefighters, 982 A.2d at 1285 (citing Pierce,875 A.2d at 426). With these principles in mind, the Court is unable to find that the Arbitrator's award is inconsistent with state law, and instead finds it reasonable to presume that the award and the statute are not mutually exclusive. The arbitrator's award is, therefore, confirmed.
 III. CONCLUSION
For the reasons set forth above, the written Agreement between SCPB and Mr. Mielke dated May 11, 2005 is deemed valid. Therefore, so is the arbitration clause contained within in that Agreement. As both a valid contract and a valid written arbitration agreement exists, the Award of the Arbitrator in the arbitration proceeding entitled David Mielke v. South County Post Beam, Inc., Arbitration No. 12 527 E 0001209 is hereby confirmed under § 10-3-11. Accordingly, judgment may enter for Mr. Mielke. Mr. Mielke's counsel shall submit a Final Judgment to the Court within ten days of the issuance of this Decision.
[1] Mr. Mielke's letter went on to discuss the time frame and parties' understanding as to the Agreement.
[2] May 12, 2005 is the date on which the SCPB stamped, dated, and initialed the contract "received."
[3] Invoices were sent on September 13, 2005, December 12, 2005, and January 5, 2006.
[4] The invoice dated 9/13/2005 lists the contract as signed on May 11, 2005, which is the correct date. The invoices dated 12/12/2005 and 1/5/2006 erroneously list the date of the agreement as May 11, 2006.
[5] First in the "Change Order" of 7/26/2005, and then in the three billing invoices SCPB sent to Mr. Mielke.
[6] See footnote 3 above.