**CUMBERLAND TEACHERS ASSOCIATION**

v.

**CUMBERLAND SCHOOL COMMITTEE.**

**No. 2011–145–Appeal.**

Supreme Court of Rhode Island.

June 29, 2012.

Vincent P. Santaniello, Esq., Cranston, for Plaintiff.

Jeffrey W. Kasle, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The Cumberland Teachers Association (union), appeals to this Court from the entry of judgment confirming an arbitrator's award in favor of the Cumberland School Committee (school committee). This case came before the Supreme Court for oral argument on May 2, 2012, pursuant to an order directing the parties to appear and show cause why the issues in this case should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown and we will proceed to decide the appeal without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Travel

In the late night hours of August 30, 2008, after engaging in protracted negotiations that had taken place over a number of months, the school committee and the union at last agreed upon a three-year collective bargaining agreement (CBA) that would govern their relations for the academic years of 2006–2007, 2007–2008, and 2008–2009. However, the parties soon discovered that they had left the negotiating table with two very different understandings of how a key component of their agreement would be implemented. In the CBA, the parties had agreed that the teachers would transition from a twelve-step salary schedule to a ten-step salary schedule. Until 2006, Cumberland teachers advanced along a twelve-step salary schedule; this was a process that departed from that of most of the state's teachers, who operated on a ten-step schedule.[1]

---

1. In accordance with the relevant contractual language, teachers who had taught at least one hundred thirty-five days during the school year were placed on the next salary step for

Also of concern to the parties during that round of negotiation were teachers' salaries. Cumberland teachers were compensated at well below the state average. In an effort to attract and retain the most qualified and talented teachers, the school committee conceded that the salaries had to be increased; it also agreed that the current salary structure should be collapsed from a twelve-step system to the much more common ten-step system.[2]

In the spring of 2006, the parties began negotiating the terms of a new CBA to succeed the contract that was set to expire at the end of August. Because the teachers were concerned with a lack of progress, they asked that a state mediator be appointed. Finally, with the mediator's assistance, the parties reached an agreement late in the night of August 30, 2006. The process was, as is typical, harried and exhausting for both sides. Proposals and counterproposals were shuffled between the parties, with handwritten edits, notes, and comments present on almost every page of each proposal. A number of charts also were compiled by the parties as they endeavored to establish the mechanism by which teachers would be transitioned from a twelve-step schedule to a ten-step schedule during the life of the new agreement. Eventually, the parties came to closure on a new agreement that would provide for semiannual pay raises of 2 percent during the 2007–2008 and 2008–2009 years and would establish a new schedule for step increases.

Instead of immediately collapsing the existing schedule from twelve steps to ten, the parties agreed to transition incrementally to the new ten-step schedule. Specifically, the CBA provided that during the 2006–2007 year, the salary schedule would be reduced to eleven steps. However, beginning with the 2007–2008 year, the salary schedule would have only ten steps. During the 2008–2009 year, teachers would continue to be compensated in accordance with a ten-step salary schedule.

The first year under the new agreement passed uneventfully, and there was no dispute between the parties about the placement of teachers on the salary scale for the 2006–2007 contract year. But, in September 2007, a significant disagreement arose between the parties about how that progression should take place. Because the parties were unable to resolve their differences, a grievance was filed by the union, and the matter eventually was referred to arbitration pursuant to the terms of the CBA.

An arbitrator was selected and the parties agreed that the issue to be decided by the arbitrator was whether "the Cumberland School Committee place[d] the aggrieved teachers at the correct salary level for the 2007–08 school year?"[3] Four days of hearings were held in the spring of 2008, and the arbitrator reviewed significant memoranda and supplemental memoranda on the issue. The parties presented evidence, including each party's version of the applicable principles for the initial salary step placement in year one, and the

the following year. For example, after completing his or her first year of teaching of at least one hundred thirty-five days, a teacher would be compensated at Step 2 for the next year. The highest step a teacher in Cumberland could reach was Step 12.

**2.** The school committee acquiesced to the changes proposed by the union, as long as the

overall increase in salary expenditures could be kept within its budget.

**3.** The school committee also asked the arbitrator to decide whether the dispute was procedurally or substantively arbitrable. The arbitrator decided both of those issues against the school committee. Neither of those issues is before us in this appeal.

subsequent placement for the 2007–2008 year and the 2008–2009 year. During the hearings, several witnesses testified for each side about the negotiations and mediation, including the development of the salary schedule that was appended to the tentative agreement.[4]

On December 22, 2008, the arbitrator issued an award in which he denied the union's grievances for the school years of 2007–2008 and 2008–2009. Dissatisfied with the award, the union filed a motion in the Superior Court to vacate it, and the school committee filed a cross-motion to confirm the award. On July 21, 2010, a justice of the Superior Court denied the union's motion to vacate the award and granted the school committee's motion to confirm. The judgment confirming the arbitration award was entered on August 30, 2010; the union filed a timely notice of appeal to this Court on September 9, 2010.

Before us, the union argues that the arbitrator manifestly disregarded a contract provision when he found that there was no written agreement about how the new salary schedule would be implemented for the 2007–2008 year. The union contends that the arbitrator subjectively concluded that the union's transition proposal, which it contends had been accepted by the school committee, would have produced a disproportionately high pay increase for some teachers. Therefore, the union insists that the arbitrator acted irrationally when he "reformed" the salary schedule because it was in direct conflict with the "agreed-upon" transitional plan for the salary schedule.

The school committee responds by relying on this Court's exceptionally limited standard of review with respect to arbitration awards. It argues that the arbitrator's decision drew its essence from the CBA and was based upon a passably plausible interpretation of that agreement. The school committee also maintains that there is no support for the union's position that there was a mutually "agreed-upon" transition plan. It argues that there was a complete lack of any convincing, competent, or credible evidence of such an agreement before the arbitrator.

## Standard of Review

■■■■■ "We review arbitral awards under an exceptionally deferential standard as a means of ensuring that parties may benefit from arbitration as a relatively informal and expedient alternative to litigation in the court system." *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers,* 945 A.2d 339, 347 (R.I.2008). "[T]he role of the judiciary in the arbitration process is 'extremely limited.'" *Aponik v. Lauricella,* 844 A.2d 698, 703 (R.I.2004) (quoting *Purvis Systems, Inc. v. American Systems Corp.,* 788 A.2d 1112, 1114 (R.I. 2002)). "The authority of the courts in this jurisdiction to review an arbitral award is statutorily prescribed and is limited in nature." *City of East Providence v. International Association of Firefighters Local 850,* 982 A.2d 1281, 1285 (R.I.2009) (quoting *North Providence School Committee,* 945 A.2d at 344). "Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." *Id.;* accord *North Providence School Committee,* 945 A.2d at 344.

---

4. During the arbitration process, the placement of teachers on the 2008–2009 salary schedule became the subject of another grievance filed by the union. By agreement of the parties, the latter dispute was consolidated for decision with the first arbitration case, and additional documentation was submitted to the arbitrator.

General Laws 1956 § 28–9–18 specifies three grounds under which an arbitration award may be vacated: (1) when the award was procured by fraud; (2) where the arbitrator exceeds his powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made; or (3) if there was no valid submission or contract and the objection has been raised at the arbitration. In addition, this Court has held that an award may be vacated if "the award was irrational or if the arbitrator manifestly disregarded the law." *North Providence School Committee*, 945 A.2d at 344 (quoting *Purvis Systems, Inc.*, 788 A.2d at 1115).

"The court has no authority to vacate the arbitrator's award absent a manifest disregard of a contractual provision, a completely irrational result, a decision that is contrary to public policy, or an award that determined a matter that was not arbitrable in the first place." *Fleet Construction Co. v. Town of North Smithfield*, 713 A.2d 1241, 1243 (R.I.1998); *accord Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections*, 707 A.2d 1229, 1234 (R.I. 1998). "[A] manifest disregard of the law requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" *City of East Provi-*

*dence*, 982 A.2d at 1286 (quoting *North Providence School Committee*, 945 A.2d at 344). "[A] manifest disregard of the law occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it." *Id.*

"[A]s long as an arbitrator's award 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *City of East Providence*, 982 A.2d at 1285 (quoting *Town of Coventry v. Turco*, 574 A.2d 143, 146 (R.I.1990)); *accord Purvis Systems, Inc.*, 788 A.2d at 1115 (citing *Jacinto v. Egan*, 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978)).

## Analysis

The union maintains that the Superior Court erred when it denied its motion to vacate the arbitrator's award and granted the school committee's motion to confirm the award.[5] Specifically, the union argues that the arbitrator exceeded his authority because he manifestly disregarded a contract provision. This is so, the union contends, because the arbitrator failed to consider or reconcile his decision with Article 5.C of the CBA.[6] Conversely, the school committee maintains that the arbitrator found that the parties never reached closure on how the parties would

---

**5.** The union also argues that the lengthy analysis conducted by the arbitrator concerned only step progression for the 2007–2008 year and therefore "the arbitrator failed to conduct any analysis whatsoever" with respect to the 2008–2009 year. To the contrary, the school committee points out that in his decision, the arbitrator did consider the transitional plan for the 2008–2009 year. After reviewing the decision, it is our opinion that there is no merit to the union's argument on this issue. We are satisfied that the arbitrator considered the 2008–2009 year in his decision. Based on his conclusion that the 2007–2008 salary schedule placements effectuated by the school

committee were contractually proper, a conclusion with which we agree, he found that "it necessarily follows that the [2008–2009] placements were also proper."

**6.** Article 5.C states:

"A teacher who has taught one hundred and thirty-five (135) days in a given school year on either a regular or a substitute basis, or a combination thereof, shall be given credit for a school year and placed on the next salary step if hired for the next school year."

transition teachers to the new salary scale, beginning with the 2007–2008 year.[7]

The arbitrator's decision requires us to engage in a journey through the parties' somewhat serpentine bargaining history with respect to this contract. The process, which the arbitrator surmised may have been affected by fatigue of the negotiators on both sides, resulted in an agreement on this issue, which, to be charitable, was less than precise. In his award, the arbitrator painstakingly analyzed the various proposals of the parties as they struggled to articulate how to structure their agreement that twelve incremental salary steps would be condensed to ten in an efficient manner.

A review of the record and the award demonstrates that the arbitrator specifically addressed Article 5.C in his decision, noting that the provision was clear and unambiguous when it was applied to a salary schedule that included the same number of steps during each year of the agreement. Significantly, however, he then explained that the provision became somewhat "unclear and ambiguous as applied to a salary schedule which has different numbers of steps during the term of the agreement"—such as the 2006–2008 term in dispute.

When he reviewed the evidence, the arbitrator examined the various exhibits and charts that had been submitted to him. He made a finding that one of the charts prepared by the union contained an error, and that that error had been presented by the union leadership to the rank-and-file members of the union before they voted to approve the agreement. He also determined that if he accepted the union's proposal, the result would be an exorbitant pay increase for some teachers, a result

that he found was not in keeping with the parties' intent. The arbitrator also stated:

"Certainly, the salary structure itself may be viewed as a primary source. However, in this instance, I tend to agree with the [s]chool [c]ommittee, which has suggested that the figures for [the years 2007–2008 and 2008–2009] were not properly lined up with the corresponding source figures from [2006–2007]. * * *

"In my view, after all is said and done, the most reliable and the most objective indicator of the parties' intention may be found in their agreement to move the teachers 'horizontally' during [2006–2007] (e.g., from old Step 6 to new Step 6) and then to increase the [2007–2008] pay by 4% (in two semi-annual increments of 2%). By following the agreed-upon [2006–2007] pay figures, as they are increased by 4% during [2007–2008], we may determine what constitutes the next higher step.

" * * *

"Based upon my review of the evidence, I have concluded that the 'down/diagonal' movement advocated by the [u]nion for [2007–2008] does not result in teachers being placed on the 'next [higher] salary step' for the next year. The rightward movement does correctly give them the negotiated general pay increase for [2007–2008] (2% + 2%). But the downward movement would result in them being placed on the second higher salary step, rather than the next higher salary step."

In our view, the arbitrator, as he struggled to resolve the ambiguity inherent in the agreement, considered the arguments of each party as each endeavored to con-

---

**7.** Specifically, the arbitrator found that despite the fact that the parties should have addressed the issues involved in making the transition to the new structure, "the parties did not see fit to embody the agreed-upon transitional rules, if any, in writing."

vince him that its particular version of events should be followed in reaching a decision as to what they had agreed upon to effectuate the transition. In the end, the arbitrator concluded that the school committee's position best expressed the intent of the contracting parties and was more in keeping with their mutual understanding concerning the overall cost of the CBA.

Under our exceptionally deferential standard of review, we have no hesitation in holding that the arbitrator's award " '[drew] its essence' from the contract and [was] based on a 'passably plausible' interpretation of the contract * * *." *City of East Providence,* 982 A.2d at 1285 (quoting *Turco,* 574 A.2d at 146). Therefore, in keeping with our well-settled law, our review must end. In our opinion, the union has not demonstrated that the arbitrator manifestly disregarded the contract or that he was completely irrational in arriving at his decision and award.

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case are remanded to the Superior Court.