**Supreme Court**

No. 2011-99-Appeal.

(PM 08-4416)

State of Rhode Island, Department of    :
Corrections

v.    :

Rhode Island Brotherhood of Correctional    :
Officers.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State of Rhode Island, Department of     :
Corrections

            v.                 :

Rhode Island Brotherhood of Correctional    :
Officers.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.** The Rhode Island Department of Corrections (the DOC) is charged with "the custody, care, discipline, training, treatment, and study of persons committed to state correctional institutions or on probation or parole * * *." See G.L. 1956 § 42-56-1(b). The Rhode Island Brotherhood of Correctional Officers (the union) is the certified bargaining unit for correctional officers and certain other DOC employees. The parties' dispute stems from the DOC's proposal to modify the weapons qualification component of the training program for correctional officers. The union filed a grievance, arguing that the training program could not be modified without the approval of a training committee that had been created under the parties' collective bargaining agreement (the CBA). An arbitrator agreed and ruled in the union's favor. After the Superior Court confirmed the arbitration award, the DOC sought redress before this Court. For the reasons stated below, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

The CBA, which was in effect at all times relevant to this appeal, contains several provisions that are central to the parties' dispute. One of those provisions is Article XXXI, section 31.1, which requires the DOC to "offer a minimum of forty (40) hours per year of training to all uniformed Correctional Officers." Section 31.2 creates a training committee. Composed of two representatives of the DOC and two representatives of the union, it is charged with "submit[ting] a comprehensive program pertinent to the training of Correctional Officers * * *."

Another key provision of the CBA relates to weapons qualification.[1] Section 31.3 states that "[e]mployees who are required to engage in a weapons qualification shall do so on [s]tate time." Furthermore, it provides that "[t]he time frame for qualifying shall be one (1) year from the date of the officer's last qualification * * *." This litigation, and the arbitration that preceded it, centers on the DOC's statutory and contractual obligations regarding weapons qualification.

In 1959, the General Assembly enacted a statute that required law enforcement officers in Rhode Island to undergo weapons qualification prior to their appointment. G.L. 1956 § 11-47-17, as enacted by P.L. 1959, ch. 75, § 1. The statute also required law enforcement officers to "repeat this qualification at periods of not more than one year." Id. In 2007, § 11-47-17 was amended to provide that "correctional officers * * * must repeat [weapons] qualification every two (2) years."[2] P.L. 2007, ch. 73, art. 3, § 15.

---

[1] The term "weapons qualification" refers to the statutorily-mandated process by which law enforcement and correctional officers in Rhode Island earn the privilege of carrying a firearm. See G.L. 1956 §§ 11-47-15.1, 11-47-17, 11-47-17.1.

[2] The record indicates that the then-governor endorsed this amendment, which he recommended "[i]n order to reduce overtime costs." A document prepared by the House Fiscal Advisory Staff

- 2 -

After the Legislature amended § 11-47-17, the DOC intended to conduct live, on-range weapons qualification every two years, instead of annually, as it had done in the past. For the years in which it would not conduct live weapons training, the DOC purchased a computer system, known as Prism, for simulated weapons training. It then sought the training committee's approval to implement this system. At a meeting of the training committee held on March 12, 2008, one of the union's representatives stated that the union was opposed to the use of the Prism system. Two days later, at another training committee meeting, the same union representative reiterated this stance. The meeting minutes from March 14, 2008, reflect that both the DOC and the union intended to consult with counsel regarding the impasse on this issue.[3] The matter then proceeded to arbitration.

An arbitrator heard the grievance on May 28, 2008; both parties were represented by counsel. In a written decision submitted on June 13, 2008, the arbitrator ruled in the union's favor. He framed the issue before him as follows: "Would it violate the [CBA] for the [DOC] to change the weapons qualification component of the * * * in-service training program if a majority of the [t]raining [c]ommittee has not adopted that change?"

Relying on previous arbitration decisions, he first decided that the grievance was arbitrable. He characterized the dispute before him as one "involv[ing] the interpretation and

---

also states that "[t]he Governor recommended [the amendment] to allow biennial weapons requalification for correctional officers instead of annual requalification for savings of $544,824." Although these documents are helpful in understanding the background against which this dispute unfolded (and, therefore, in determining whether the dispute is arbitrable), as we explain below, they do not bear upon our analysis of the merits of this appeal. See Such v. State, 950 A.2d 1150, 1158 (R.I. 2008) ("There is no recorded legislative history in Rhode Island from which to ascertain legislative intent." quoting Laird v. Chrysler Corp., 460 A.2d 425, 428 (R.I. 1983)). Additionally, although a similar amendment was made to § 11-47-17.1, for simplicity's sake, this opinion refers only to § 11-47-17.

[3] Although it does not appear that a formal vote was taken, the two union representatives and the two DOC representatives were deadlocked on this issue.

application of [section] 31.2"—the training committee provision of the CBA. In his view, the dispute "[fell] squarely within the definition of an arbitrable grievance under [s]ection 18.3 [of Article XVIII] of the [CBA]."[4] He also rejected the DOC's argument that § 42-56-10(14) gave its director the non-delegable (and therefore non-arbitrable) right to control training.[5] Additionally, he found that a recent amendment to that statute supported his conclusion that the dispute was arbitrable.[6]

The arbitrator then considered the merits of the union's grievance. He explained that the effect of a deadlock among the members of the training committee had already been settled by prior arbitration awards between the parties. Quoting a 2004 decision of Arbitrator Boulanger, he stated that "[i]f the [t]raining [c]ommittee deadlocks * * * the disputed training component does not change." He dismissed the DOC's contention that it was statutorily obligated to discontinue annual weapons qualification and therefore had to implement the Prism system to meet its contractual obligation to provide forty annual hours of training to correctional officers. The arbitrator found that, although the amendment to § 11-47-17 eliminated the DOC's obligation to conduct annual weapons qualification, it did not preclude the DOC from doing so.

---

[4] Section 18.3 of Article XVIII provides for the arbitration of "grievances arising out of the provisions of this contract relating to the application or interpretation thereof * * *."
[5] That statute confers upon the DOC's director the authority to "[e]stablish training programs for [DOC] employees." G.L. 1956 § 42-56-10(14).
[6] That amendment reads as follows:

> "Notwithstanding the enumeration of the powers of the director [of the DOC] as set forth in this section, and notwithstanding any other provision of the general laws, the validity and enforceability of the provisions of a collective bargaining agreement shall not be contested, affected, or diminished, nor shall any arbitration award be vacated, remanded, or set aside on the basis of an alleged conflict with this section or with any other provision of the [g]eneral [l]aws." Section 42-56-10(24), as amended by P.L. 2007, ch. 523, § 1.

The arbitrator also considered the DOC's claimed fiscal inability to pay for live, on-range weapons qualification. He found that, "under the reasoning of [Arbitrator Boulanger's 2004 decision], the [DOC] was aware [that] it was contractually obligated to continue the existing weapons qualification component of the in-service training program until the [t]raining [c]ommittee adopted an alternative * * *." The DOC, he wrote, "could have planned for the contingency that a majority of the [t]raining [c]ommittee would be unable to agree to an alternative." The arbitrator concluded that, despite the DOC's "difficult fiscal picture," he could not ignore the plain language of the CBA, which required annual on-range weapons qualification.

Finally, the arbitrator rejected the DOC's assertion that it would be unable to satisfy the CBA's requirement that it offer forty hours of annual training to correctional officers (per section 31.1) unless it were allowed to implement the Prism system in lieu of on-range weapons qualification. Because Arbitrator Boulanger's 2004 decision (which the DOC did not appeal) had made it clear that the status quo would be preserved if the training committee deadlocked, he "conclude[d] that the [DOC could] not change the content of the in-service training program, including the weapons qualification component, unless a majority of the [t]raining [c]ommittee first adopt[ed] that change." The DOC, he found, could meet the forty-hour requirement by conducting annual on-range weapons qualification, as it had in previous years.

On August 20, 2008, the DOC filed a petition in the Superior Court seeking to vacate, or, in the alternative, modify, the arbitration award, pursuant to G.L. 1956 §§ 28-9-18(a) and 28-9-20. The union responded on September 8, 2008, by filing a motion to confirm the arbitration award, pursuant to § 28-9-17. The parties then filed memoranda in support of their respective positions.

The DOC characterized the parties' dispute as "outside the purview of the arbitrator's jurisdiction." In the DOC's view, § 11-47-17 set forth a clear employment requirement that correctional officers undergo weapons qualification every two years. Citing to a prior decision of this Court, it asserted that this statutory requirement directly conflicted with the CBA provision regarding weapons qualification and, therefore, could not be arbitrated. See State (Department of Administration) v. Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, Local 2409, 925 A.2d 939, 945 (R.I. 2007) ("[A] valid employment requirement prescribed by state law cannot be negotiated and is not a proper subject for arbitration." quoting Town of West Warwick v. Local 2045, Council 94, 714 A.2d 611, 612 (R.I. 1998) (mem.)). The DOC also claimed that its director had a statutory duty to train correctional officers that was non-delegable and therefore non-arbitrable. Furthermore, it contended that § 42-56-10(24) did not preclude the court from vacating the arbitration award. It argued that the union's interpretation of that statute violated the principle of separation of powers and was therefore unconstitutional.

In opposition, the union cited § 42-56-10(24) in support of its argument that the grievance was indeed arbitrable. It also asserted that the grievance was not rendered inarbitrable by virtue of any provision of § 42-56-10 or the management rights clause of the CBA.[7] It argued that § 11-47-17 did not directly conflict with the CBA provision regarding weapons qualification. Finally, it urged the court to confirm the arbitration award, as it represented a rational interpretation of the CBA based on the decisions of previous arbitrators.

After reviewing the parties' memoranda, a justice of the Superior Court issued a written decision on August 18, 2010. Rejecting the DOC's argument that § 42-56-10(14) prevented the

---

[7] That provision of the CBA, section 4.1 of Article IV, vests management rights solely with the DOC, "except as limited, abridged, or relinquished by [other] terms and provisions of [the CBA]."

arbitration of the dispute, he first concluded that the dispute was arbitrable. He noted that § 42-56-10(24) specifically states that "[no] * * * arbitration award [shall] be vacated, remanded, or set aside on the basis of an alleged conflict with this section or with any other provision of the [G]eneral [L]aws."

Reaching the merits of the dispute, and relying on Hart Engineering Co. v. Pawtucket Water Supply Board, 560 A.2d 329, 330 (R.I. 1989), the justice found that "the award draws its essence from [section 31.2 of] the contract." He also found that the arbitrator's conclusion—that proposed changes to the training program could not be implemented without the training committee's approval—was "based upon a 'passably plausible' interpretation of the contract." See id. Finally, he found that the arbitrator had not exhibited a manifest disregard for the law in concluding that § 11-47-17 did not preclude annual weapons qualification for correctional officers. Accordingly, the Superior Court confirmed the arbitration award in its entirety.

Final judgment was entered on September 13, 2010. On October 18, 2010, the DOC moved for an extension of time to file its notice of appeal. After that motion was granted on November 1, 2010, it filed its notice of appeal on the same day.

## II

### Issues on Appeal

On appeal, the DOC first argues that ensuring appropriate weapons training is a non-delegable and non-arbitrable statutory duty of its director. Second, it contends that § 11-47-17 sets forth a valid employment requirement that directly conflicts with the CBA. Although the CBA requires annual weapons qualification, the DOC asserts that the CBA is trumped by § 11-

- 7 -

47-17, which mandates biennial weapons qualification for correctional officers.[8]  Finally, it maintains that § 42-56-10(24) does not preclude this Court from vacating the arbitration award.

In response, the union argues that the grievance is arbitrable and that § 11-47-17 cannot excuse the DOC from its obligations under the CBA.  It denies that a direct conflict exists between section 31.3 of the CBA and §§ 11-47-17 or 42-56-10(14).  The union urges us to uphold the arbitration award, which it describes as "rational" and "based upon a passably plausible interpretation of the CBA."

## III

## Standard of Review

"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity."  Cumberland Teachers Association v. Cumberland School Committee, 45 A.3d 1188, 1191 (R.I. 2012) (quoting City of East Providence v. International Association of Firefighters Local 850, 982 A.2d 1281, 1285 (R.I. 2009)).  The judiciary thus has an "extremely limited" role to play in the process of arbitration.  Id. (quoting Aponik v. Lauricella, 844 A.2d 698, 703 (R.I. 2004)).

Under § 28-9-18(a), an arbitration award must be vacated if (1) it was procured by fraud; (2) the arbitrator exceeded his or her powers or failed to make a mutual, final, and definite award upon the subject matter submitted; or (3) there was no valid submission or contract and the objection has been raised under certain conditions.  Otherwise, "[t]he court has no authority to vacate the arbitrator's award absent a manifest disregard of a contractual provision, a completely irrational result, a decision that is contrary to public policy, or an award that determined a matter

---

[8] "Biennial" means "[h]appening every second year."  The American Heritage Dictionary of the English Language 177 (4th ed. 2009).

that was not arbitrable in the first place." Cumberland Teachers Association, 45 A.3d at 1192 (quoting Fleet Construction Co. v. Town of North Smithfield, 713 A.2d 1241, 1243 (R.I. 1998)).

We have also held that "an [arbitration] award may be vacated if 'the award was irrational or if the arbitrator manifestly disregarded the law.'" Cumberland Teachers Association, 45 A.3d at 1192 (quoting North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers, 945 A.2d 339, 344 (R.I. 2008)). "[A] manifest disregard of the law occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it." Id. (quoting City of East Providence, 982 A.2d at 1286).

Moreover, a court has no authority to vacate an arbitration award based upon a mere error of law. See Cumberland Teachers Association, 45 A.3d at 1192. If the award "'draws its essence' from the contract" and reflects a "'passably plausible' interpretation of the contract," a reviewing court must confirm the award. Id. (quoting City of East Providence, 982 A.2d at 1285).

## IV

## Discussion

## A

## Arbitrability

Before we consider the merits of the parties' dispute, we must first decide whether it is arbitrable. "This Court reviews de novo the legal question of whether a dispute is arbitrable." City of Newport v. Local 1080, International Association of Firefighters, AFL-CIO, 54 A.3d 976, 980 (R.I. 2012). Our decision in North Providence School Committee, 945 A.2d at 346, is instructive on this issue. In that case, we considered whether the school committee's decision to

discontinue a portion of the academic schedule gave rise to an arbitrable dispute. Id. The arbitrator found that this decision "did not constitute a matter of educational policy, which would be committed to the sole discretion of the school committee." Id. Rather, in his view, the school committee's decision "was based on budgetary and teaching load concerns—* * * matters affecting the terms and conditions of employment—which he considered to be arbitrable * * *." Id. We concluded that the arbitrator had correctly deemed the dispute to be arbitrable. Id.

Here, as in North Providence School Committee, the parties' dispute stems from budgetary concerns. In his decision, the arbitrator explained that, "in early 2007, * * * the [g]overnor asked the [DOC] to propose cost[-]saving measures to address the [s]tate's fiscal problems. In response, the [DOC] proposed that the annual weapons qualification requirement for [correctional officers] be changed to require [correctional officers] to qualify every two years." Additionally, the arbitrator noted that the DOC "contend[ed] that it simply ha[d] no money to pay for weapons qualification [in 2008]." It is clear to us that the DOC's proposal to abandon yearly on-range weapons qualification was based on budgetary concerns.

The DOC contends that, pursuant to § 42-56-10(14), its director has the statutory authority and duty to "establish training programs" for its employees. However, the statute does not specify that this authority and duty is exclusive. As in North Providence School Committee, the union is "statutorily entitled to negotiate over matters that directly affect the work and welfare of [its] members * * *." See 945 A.2d at 346; § 28-9-1 ("controversies respecting terms and conditions of employment" are arbitrable). Thus, the statute does not prevent the DOC's

director from exercising this power in consultation with the union. This dispute is therefore arbitrable.[9] We now turn to the merits of the arbitration award.

## B

### Merits

In determining that the DOC lacked the authority to implement the Prism system without the training committee's approval, the arbitrator based his reasoning upon the award of a previous arbitrator who had decided a similar dispute between the parties. He stated that Arbitrator Boulanger's 2004 decision "could not have been any clearer on" the effect of a deadlock among the members of the training committee. Quoting that prior award, he stated that "[i]f the [t]raining [c]ommittee deadlocks * * * the disputed training component does not change."[10]

The arbitrator then rejected the DOC's argument that § 11-47-17 prohibited it from complying with the CBA's requirement of annual weapons qualification. He determined that this statute did not directly conflict with that provision of the CBA, explaining that he read this statute "to create an exception to the required annual weapons qualification for other kinds of law enforcement officers." He found that, although the DOC was no longer statutorily obligated to have correctional officers complete weapons qualification on an annual basis, it was not statutorily precluded from doing so.

---

[9] In concluding that the dispute was arbitrable, the Superior Court justice based his decision on § 42-56-10(24), which purports to limit the judiciary's review of arbitration awards involving the DOC. Because our conclusion on arbitrability has a different basis, and because of the well-settled doctrine of constitutional avoidance, we need not decide whether § 42-56-10(24) violates the principle of separation of powers. See In re Brown, 903 A.2d 147, 151 (R.I. 2006) ("Neither this Court nor the Superior Court should decide constitutional issues unless it is absolutely necessary to do so.").

[10] In its brief, the DOC states that it "has struggled considerably with the challenge of making this [prior] award workable," but admits that it did not seek to have that award modified or vacated. The present dispute, then, is something of a self-inflicted wound.

A close examination of § 11-47-17 demonstrates that the arbitrator's decision was passably plausible. That statute provides that law enforcement officers must "repeat [weapons] qualification at periods of not more than one year, except for correctional officers who must repeat this qualification every two (2) years." Section 11-47-17, as amended by P.L. 2007, ch. 73, art. 3, § 15. The arbitrator read that statute to mean that correctional officers were required to undergo weapons qualification at least every two years. He found that the statute prescribed a maximum time period, rather than a minimum or fixed time period, within which correctional officers must complete weapons qualification. Such an interpretation was passably plausible.

We emphasize that, in reviewing the arbitration award, we do not engage in our usual de novo review of statutes and contracts. Rather, precedent dictates that our task is merely to decide whether his interpretation of the CBA was passably plausible and did not manifestly disregard the law. See Cumberland Teachers Association, 45 A.3d at 1192. Given the limited scope of our review of arbitration awards, we cannot disturb the arbitrator's determination that the DOC could not modify the weapons qualification component of the training program without the training committee's approval and that it was not statutorily precluded from fulfilling its contractual obligation to conduct annual weapons qualification. Because we hold that the arbitrator's interpretation of the CBA was passably plausible, did not reflect a manifest disregard for the law, and was not irrational, the arbitration award must stand.

V

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the record in this case.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

---

**TITLE OF CASE:**      State of Rhode Island, Department of Corrections v. Rhode Island Brotherhood of Correctional Officers.

**CASE NO:**      No. 2011-99-Appeal.
(PM 08-4416)

**COURT:**      Supreme Court

**DATE OPINION FILED:**  April 25, 2013

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Jeffrey A. Lanphear

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Kathleen M. Kelly
        Office of Legal Counsel Department of Corrections

For Defendant:  Carly Beauvais Iafrate, Esq.