February 11, 2025

**Supreme Court**

No. 2023-238-Appeal.
(PC 22-4911)

New England Property Services   :
      Group, LLC

        v.         :

NGM Insurance Company.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

New England Property Services　　:
　　Group, LLC

　　　　　　v.　　　　　　　:

NGM Insurance Company.　　　:


Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  The plaintiff, New England Property

Services Group, LLC (NEPSG), appeals from the entry of summary judgment in

favor of the defendant, NGM Insurance Company (NGM).  NEPSG asserts that the

Superior Court erred in determining (1) that it was not entitled to either a

modification of the Appraisal Agreement Award or a second appraisal; and (2) that

NEPSG failed to establish its claims for breach of contract, bad faith, unjust

enrichment, and tortious interference with contractual relations.  For the reasons set

forth herein, we affirm the judgment of the Superior Court.

**Facts and Travel**

The defendant, NGM, issued a homeowner's insurance policy to Stephen and

Betty Callahan (policyholders) for the residence located at 142 Cooper Road,

Chepachet, Rhode Island. In December of 2020, the policyholders filed a claim under the policy for storm-related direct physical loss to the subject premises (claim).

Thereafter, the policyholders executed a written irrevocable assignment of insurance claim benefits and rights contract with NEPSG, whereby the policyholders assigned all their rights and benefits regarding the claim to NEPSG. NGM retained Keystone Experts + Engineers to inspect the subject premises. Based on Keystone's inspection, NGM sent NEPSG a letter confirming coverage for the wind damage to the front porch door and light and the water damage to the interior. The letter indicated that NGM was unable to cover the roof and siding damages because the policy did not cover loss caused by improper work and/or maintenance activities.

Subsequently, NGM hired The Hamel Company to inspect the physical damage to the subject premises and prepare an estimate of loss. According to NEPSG, on February 10, 2021, NGM issued a check to the policyholders and NEPSG representing the valuation for the amount of loss, but which purportedly included only payment for the wind and water damage to the front porch. After NEPSG disagreed with that estimate, NGM hired Envista Forensics to conduct a full reinspection of the subject premises and generate an updated estimate. On October 8, 2021, NGM issued a check for the updated estimated amount of loss based on the second inspection. NEPSG again disagreed with the estimated amount of loss. The

disagreement persisted until NEPSG eventually demanded an appraisal of the loss pursuant to the policy's "Appraisal" clause. The "Appraisal" clause reads as follows:

> "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. * * * The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

NEPSG emailed its written demand for appraisal to NGM on February 25, 2022, and named its appraiser. On March 7, 2022, NGM accepted the demand for appraisal and selected its appraiser. Thereafter, the appraisers agreed to appoint William Poore, Esquire, as the umpire. On March 31, 2022, the appraisers signed an Appraisal Agreement Award (award) that set the replacement cost value of the loss at $88,355.97. In reaching such agreement, the appraisers used Xactimate software to determine the cost of the repairs involved in restoring the subject premises.[1] On April 6, 2022, NGM rendered full payment of the amount due under the award to NEPSG.

---

[1] Xactimate is a computer program that estimates the cost of property damage repairs and replacements. Verisk, *Xactimate: Property Claims Estimating Software*, https://www.verisk.com/products/xactimate/ (last visited Dec. 4, 2024).

On April 14, 2022, NEPSG sent NGM a letter indicating the increased price of vinyl siding labor for March 2022 and requesting a supplemental payment in the amount of $9,713.64 to reflect the intent of the parties to use the actual March 2022 labor market projections in the award. In the letter, NEPSG alleged that, on April 1, 2022, Xactimate had published an increase in its valuation of the labor costs associated with the installation of vinyl siding based on data from March 2022. NGM declined to supplement the award. On April 17, 2022, NEPSG emailed NGM a written demand for a second appraisal of the claim. According to NEPSG, NGM refused to engage in a second appraisal.

On August 15, 2022, plaintiff filed the instant action in Superior Court seeking a declaratory judgment that the award is subject to G.L. 1956 § 10-3-14 and should be modified to account for the miscalculated vinyl siding labor cost or, alternatively, that NEPSG was entitled to a second appraisal of the claim. The complaint also alleged that NGM had engaged in a breach of contract, bad faith, unjust enrichment, and tortious interference with a contractual relationship.

NGM moved for summary judgment on December 16, 2022, arguing (1) that NEPSG's claims were barred by the doctrine of accord and satisfaction because it had negotiated a settlement and accepted payment in full, and (2) that NGM had discharged any duty it owed to NEPSG by engaging in the appraisal process. NEPSG objected to summary judgment, asserting that the award at issue was an

arbitration award rather than an accord and satisfaction and that an insurer does not discharge all legal and equitable duties to a claimant merely by engaging in the appraisal process.

In a bench decision on April 4, 2023, the hearing justice granted NGM's motion for summary judgment, finding that although the award was an arbitration award rather than an accord and satisfaction resolving the entire dispute, NEPSG had not set forth sufficient evidence in the record to support its claims. An order reflecting this decision entered on May 5, 2023, and final judgment in defendant's favor entered thereafter. NEPSG filed a timely notice of appeal.

**Standard of Review**

"A decision granting summary judgment is reviewed *de novo* by this Court." *Saint Elizabeth Home v. Gorham*, 266 A.3d 112, 113 (R.I. 2022). "We, like the trial justice, 'view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, we will affirm the judgment.'" *Id.* at 113-14 (quoting *Middle Creek Farm, LLC v. Portsmouth Water & Fire District*, 252 A.3d 745, 751 (R.I. 2021)). "Although summary judgment is recognized as an extreme remedy, to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that proves the existence of a disputed issue of

material fact." *Id*. at 114 (quoting *Citizens Bank, N.A. v. Palermo*, 247 A.3d 131, 133 (R.I. 2021)).

## Analysis

### Declaratory Judgment

NEPSG asserts that the hearing justice erred in granting summary judgment with respect to its declaratory-judgment claim, which seeks a declaration pursuant to G.L. 1956 § 9-30-1 that the award is subject to § 10-3-14 and should be modified or, alternatively, that NEPSG was entitled to a second appraisal of the claim. Initially, we note that this Court has, on multiple occasions, looked at insurance policy appraisal clauses with nearly identical language to the clause at issue here and determined that the appraisal process is generally considered to be a form of arbitration. *See Grady v. Home Fire & Marine Insurance Company*, 27 R.I. 435, 436-37, 441, 63 A. 173, 173, 175 (1906); *Waradzin v. Aetna Casualty & Surety Company*, 570 A.2d 649, 649-50 (R.I. 1990). As such, we will treat the award as an arbitration award and thus it is subject to the rules that govern arbitration proceedings.

Generally, an arbitration award may be disturbed only in very narrow circumstances. *Lemerise v. Commerce Insurance Company*, 137 A.3d 696, 700 (R.I. 2016). "Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." *Id.* at 699 (quoting *State Department of*

*Corrections v. Rhode Island Brotherhood of Correctional Officers*, 64 A.3d 734, 739 (R.I. 2013)). "To preserve the integrity and efficacy of arbitration proceedings, judicial review of arbitration awards is extremely limited." *Id.* (quoting *Berkshire Wilton Partners, LLC v. Bilray Demolition Co.*, 91 A.3d 830, 834-35 (R.I. 2014)). The limited grounds for modifying an arbitration award are set forth in § 10-3-14, which provides in pertinent part:

> "(a) In any of the following cases, the court must make an order modifying or correcting the award, upon the application of any party to the arbitration:
>
> > "(1) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> "* * *
>
> "(b) The order must modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

Here, NEPSG argues that the failure to use the updated March 2022 Xactimate vinyl siding labor cost projections in calculating the value of the award constitutes a material miscalculation of figures and thus warrants a modification. However, the alleged updated Xactimate cost projections were not published until the day after the parties signed the award. Accordingly, NEPSG's argument in support of modification is based entirely on facts that were not in existence at the time the parties agreed to the award; this is not a case where the math was wrong. We have

- 7 -

held that "a trial justice reviewing an arbitration award is constrained to the four corners of the award itself and the record of the arbitration proceeding." *Lemerise*, 137 A.3d at 703. Consequently, there is no admissible evidence upon which a finder of fact could conclude that there was a miscalculation and that NEPSG is entitled to a modification pursuant to § 10-3-14.

Additionally, NEPSG's assertion that it is entitled to a second appraisal of the claim must also fail. NEPSG has alleged no basis for vacating the award outside of the fact that it submitted a second demand for appraisal to NGM after it was dissatisfied with the outcome of the first appraisal. There exists no mechanism by which a dissatisfied party can freely set aside a binding arbitration award in the absence of cause shown pursuant to § 10-3-12.[2] Further, there is no language in the

---

[2] General Laws 1956 § 10-3-12 provides that an arbitration award must be vacated:

> "(1) Where the award was procured by corruption, fraud or undue means.
>
> "(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.
>
> "(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.
>
> "(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

- 8 -

subject insurance policy to suggest that an insured is entitled to a second appraisal of a claim. Rather, the "Appraisal" clause clearly and unambiguously states that once the appraisers submit a written report of an agreement to the insurer, the amount agreed upon will be the amount of loss. Accordingly, we affirm the hearing justice's grant of summary judgment with respect to NEPSG's declaratory-judgment claim.

**Breach of Contract and Bad Faith**

Next, NEPSG contends that the hearing justice erroneously granted summary judgment on its claims of breach of contract and bad faith. NEPSG maintains that, because the appraisal was limited to determining the amount of loss and did not resolve the entire dispute, its claims of breach of contract and bad faith must survive given the disputed issues of fact regarding NGM's investigation and handling of the claim.

We first address NEPSG's assertion that NGM's decision not to either supplement the award or engage in a second appraisal constitutes both a breach of contract and an act of bad faith. As discussed *supra*, NGM had no duty to supplement the award or to acquiesce to a second appraisal under the language of the insurance contract or laws of this state. *See Providence Teachers Union, Local 958, American Federation of Teachers, AFL-CIO v. McGovern*, 113 R.I. 169, 177,

definite award upon the subject matter submitted was not made."

- 9 -

319 A.2d 358, 363 (1974) ("[An arbitration] award, if rendered in compliance with all legal requirements, is a complete, final, and binding determination of a controversy which was properly before the arbitrator."). Thus, NGM's refusal to take such actions cannot amount to either bad faith or a breach of contract.

With that, the only remaining breach-of-contract allegation is that NGM breached the terms of the policy by denying coverage for part of the claim where the physical damage to the subject premises was caused by a peril insured against. While NGM initially refused coverage for the roof and vinyl siding damage, the company promptly conducted a full reinspection of the premises and determined that the entirety of the claim was covered. The parties then reached an agreement as to the amount of loss for the entire claim pursuant to the policy's "Appraisal" clause. This is the exact process anticipated by the policy for any such disagreement. As such, NEPSG's breach-of-contract claim must fail.

With respect to the bad-faith claim, it is alleged that NGM acted in bad faith by hiring appraisers to inspect the claim who were purportedly not licensed as contractors, insurance adjusters, home inspectors, or engineers in the State of Rhode Island, thereby unduly delaying the settlement of the claim. NEPSG contends that this claim should survive summary judgment because the allegations are factually similar to the bad-faith allegations that were deemed sufficient to withstand a motion

for judgment on the pleadings in *Houle v. Liberty Insurance Corporation*, 271 A.3d 591 (R.I. 2022).

However, NEPSG's reliance on *Houle* is misplaced. First and foremost, *Houle* was an appeal from a judgment on the pleadings wherein our review was confined to the pleadings; and the judgment could only be affirmed if it was "established beyond a reasonable doubt that [the plaintiff] would not be entitled to relief from the defendant under any set of conceivable facts that could be proven in support of its claim." *Houle*, 271 A.3d at 594 (quoting *Premier Home Restoration, LLC v. Federal National Mortgage Association*, 245 A.3d 745, 748 (R.I. 2021)). In contrast, this is an appeal from summary judgment; thus our review extends beyond the pleadings and the judgment will be affirmed "if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law * * *." *Saint Elizabeth Home*, 266 A.3d at 113 (quoting *Middle Creek Farm, LLC*, 252 A.3d at 751).

Additionally, in *Houle* the plaintiffs alleged that the defendant insurance company had acted in bad faith not only by enlisting the services of an unlicensed contractor to prepare an estimate, but also by preparing an estimate without performing a full and complete investigation and by hiring an unlicensed engineer to prepare a remediation plan and draw engineering documents. *Houle*, 271 A.3d at 594-95. In the instant case, NEPSG merely alleges that NGM used unlicensed

contractors to investigate the claim which resulted in an unduly delayed settlement of the claim. The use of unlicensed investigators, standing alone, is not a sufficient basis for a bad-faith claim against an insurance company. NGM investigated the claim and paid out the initial estimate within sixty days of the loss being reported despite the fact that the policy does not require payment until after there is a final settlement. Thereafter, NGM continued to negotiate the claim with NEPSG and conducted a full reinspection of the loss at NEPSG's request. After the reinspection, NGM paid NEPSG the amount in excess of the initial estimate despite the fact that there was still no final settlement. Finally, when NEPSG demanded appraisal nearly five months later, NGM promptly complied with the "Appraisal" clause of the policy and paid the amount due pursuant to the award within a week of the agreement being signed. Consequently, we deem no error in the hearing justice's grant of summary judgment as to NEPSG's claims of breach of contract and bad faith.

### Unjust Enrichment

NEPSG next alleges that the hearing justice erred in finding that it failed to establish a claim for unjust enrichment. NEPSG's claim for unjust enrichment is based on NGM's refusal to subsequently modify the award based on the updated Xactimate labor-cost projections. NEPSG contends that the failure to use the updated projections created a "clerical windfall" for NGM and that it would be

inequitable and unjust for NGM to retain the benefit of such windfall without compensating NEPSG.

"To recover for unjust enrichment, a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances 'that it would be inequitable for the recipient to retain the benefit without paying the value thereof.'" *Dellagrotta v. Dellagrotta*, 873 A.2d 101, 113 (R.I. 2005) (brackets omitted) (quoting *Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 1997)).

Here, there is no basis to suggest that NGM accepted a benefit under circumstances that would make it inequitable to retain in the absence of payment. The parties mutually agreed to a binding award using the most up-to-date figures available at the time of agreement to determine the amount of loss. Thereafter, NGM promptly fulfilled its contractual obligations by paying NEPSG the amount due under the award. Subsequent market fluctuations cannot serve as a basis to support a claim for unjust enrichment. Thus, the hearing justice appropriately granted summary judgment as to NEPSG's unjust-enrichment claim.

**Tortious Interference**

Finally, NEPSG argues that the hearing justice erred in granting summary judgment with respect to its claim of tortious interference with contractual relations.

NEPSG maintains that NGM intentionally interfered with the assignment contract between itself and the policyholders by directly contacting the policyholders regarding the settlement of the claim.

"To prevail on a claim of tortious interference with contractual relations, a plaintiff must show (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his or her intentional interference; and (4) damages resulting therefrom." *Nissensohn v. CharterCARE Home Health Services*, 306 A.3d 1026, 1038 (R.I. 2024) (brackets omitted) (quoting *Tidewater Realty, LLC v. State*, 942 A.2d 986, 993 (R.I. 2008)). Further, "[t]he element of intentional interference requires a showing of legal malice—meaning 'an intent to do harm without justification'—or that he acted 'for an improper purpose.'" *Greensleeves, Inc. v. Smiley*, 68 A.3d 425, 434 (R.I. 2013) (quoting *Belliveau Building Corp. v. O'Coin*, 763 A.2d 622, 627, 628 (R.I. 2000)).

Here, NEPSG failed to provide any evidence that NGM interfered with the assignment contract with an intent to do harm or for an improper purpose. *See Nissensohn*, 306 A.3d at 1038-39 (affirming the grant of summary judgment on the plaintiff's claim of tortious interference because there was no evidence that the defendant intended to do harm to the plaintiff's contract). NEPSG has made a bald assertion with no attempt to explain how NGM's communications with the policyholders regarding the settlement of the claim were intended to harm the

- 14 -

assignment contract. *See Estate of Cassiere v. Cassiere*, 246 A.3d 391, 397 (R.I. 2021) ("This Court has consistently declared that 'a party opposing summary judgment bears the burden of proving the existence of a disputed material issue of fact and, in so doing, has an affirmative duty to produce specific evidence demonstrating that summary judgment should be denied.'") (quoting *Brochu v. Santis*, 939 A.2d 449, 452 (R.I. 2008)). Accordingly, we shall not disturb the hearing justice's grant of summary judgment with respect to NEPSG's claim of tortious interference.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The papers may be returned to the Superior Court.

## STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | New England Property Services Group, LLC v. NGM Insurance Company. |
| **Case Number** | No. 2023-238-Appeal.<br>(PC 22-4911) |
| **Date Opinion Filed** | February 11, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Kevin F. McHugh |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Thomas J. Alves, Esq.<br>For Defendant:<br><br>Donna M. Lamontagne, Esq. |